**David E. TOLMAN, Plaintiff,**

v.

**John DOE, Defendant.**

**No. CIV. A. 3:97CV269.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 1, 1997.

Edward E. Scher, Thorsen Marchant & Scher, Richmond, VA, for plaintiff.

*REVISED MEMORANDUM*

MERHIGE, Senior District Judge.

THIS MATTER comes before the Court on Plaintiff David E. Tolman's Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The case was filed in the Circuit Court of the City of Richmond and removed to this Court on the basis of diversity. For the reasons stated below, the Court will GRANT Plaintiff' summary judgment motion as to Counts 1 and 2—defamation—and will DENY Plaintiff's summary judgment motion as to Count 6—intentional infliction of emotional distress.

## I. BACKGROUND

Plaintiff David E. Tolman ("Dr.Tolman") is a physician. Plaintiff is and has been a homosexual. He has not kept this fact secret from family, close friends, or acquaintances. In 1994, he learned that he has AIDS. Dr. Tolman was in compliance with the Center for Disease Control ("CDC") guidelines while treating patients and, specifically, performing cardiology procedures. *Recommendations For Preventing Transmission Of Human Immunodeficiency Virus and Hepatitis B Virus To Patients During Exposure–Prone Invasive Procedures* MMWR, Vol. 40/No. RR–8 ("CDC Rec."), at 1.

Defendant John Doe ("Dr. Doe"), is a physician who practiced with Dr. Tolman until 1996, when he left to take a position out of state. In September or October of 1995, Dr. Doe learned that Dr. Tolman had AIDS. Dr. Doe states that his "personal opinion" is to disagree with the CDC's determination that a physician with AIDS who complies with the CDC's guidelines may safely perform the procedures that Dr. Tolman was performing.

In May 1996 Dr. Doe had a conversation with a patient, during which the patient expressly asked Dr. Doe if Dr. Tolman had AIDS. The patient also asked what Dr. Doe recommended regarding the patient's continued treatment by Dr. Tolman. Dr. Doe told the patient that Dr. Tolman had AIDS and that he (Dr. Doe) would not want a physician with AIDS treating him if he were a patient.

In December 1996, Dr. Doe wrote a letter to between ten and fifteen patients. The letter stated in relevant part:

I would like to tell you that I left the program for personal reasons and because my personal career at ... was not going anywhere, and also because I could not work any more with Dr. Tolman, especially when I learned that he had AIDS and continues to perform invasive prosedures [sic] on the [cardiology] patients.

(Unfortunately, he never told me anything about it himself, maybe because he did not want me to know that he was homosexual.)

I don't realy [sic] know what to tell you regarding your heart transplant care after you learn this fact. Howevere [sic], I will leave this to your personal judgment. I personally will not want somebody with AIDS to be my phisician [sic], let alone being my [cardiologist]. You may want to think of an alternative that will beter [sic] serve you.

Complaint at Ex. 1.

Dr. Tolman alleges that the letter implies:

(1) That the plaintiff dishonestly concealed from the defendant facts pertinent to the plaintiff's fitness to practice medicine;

(2) That the plaintiff is dishonest;

(3) That the plaintiff is not fit to be a physician;

(4) That the plaintiff is not fit to be a [cardiologist];

(5) That the plaintiff does not provide sufficiently adequate care or service to the patients;

(6) That the plaintiff is performing invasive procedures on patients that put patients at inappropriate risks;

(7) That the plaintiff is putting patients at inappropriate risks; and

(8) That the plaintiff is not fit to practice medicine for reasons not specified in the letter.

Plaintiff's Amended Motion for Judgment ("AMFJ") at 12.

On three subsequent occasions, following removal to this Court, Plaintiff has sought to amend his Motion for Judgment, adding additional allegations and an additional count. Plaintiff's claims included defamation (Counts 1 and 2), violations of the Virginia insulting words statute, Va.Code Ann. § 8.01–45 (Counts 3 and 4), tortious interference with contract (Count 5), intentional infliction of emotional distress (Count 6), violation of the HIV test confidentiality statute, Va.Code Ann. § 32.1–36.1 (Count 7). On August 29, 1997, Defendant was granted summary judgment as to counts 3, 4, 5, and 7. Plaintiff now seeks summary judgment as to the surviving counts—defamation (Counts 1 and 2) and intentional infliction of emotional distress (Count 6).

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Summary judgment is appropriate only when the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Allstate Fin. Corp. v. Finacorp. Inc.,* 934 F.2d 55, 58 (4th Cir. 1991). The moving party has the initial burden of establishing the absence of a genuine issue of fact.[1] *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir.1987).

Once the movant has met this burden, and a properly supported motion is before the Court, the non-moving party must set forth specific facts showing that there is a genuine issue for trial in order to defeat the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Allstate,* 934 F.2d at 58. Summary judgment is proper if, based on the evidence, "a reasonable jury could [not] return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Allstate,* 934 F.2d at 58.

## III. ANALYSIS

### A. Defamation (Counts 1 and 2)

▪▪▪ To prevail in a defamation case, the plaintiff must prove by a preponderance of the evidence that the defamatory publication was false. *See The Gazette, Inc. v. Harris,* 229 Va. 1, 325 S.E.2d 713, 724–25 (1985), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 643 (1985); *Freedlander v. Edens Broadcasting, Inc.,* 734 F.Supp. 221, 227 (E.D.Va.1990). A defamatory charge may be made by inference, implication or insinuation. *See Carwile v. Richmond Newspapers,* 196 Va. 1, 82 S.E.2d 588, 592 (1954) ("In order to render words defamatory and actionable it is not necessary that the defamatory charge be in direct terms but it may be made indirectly, and it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory.") As explained in the Court's August 29, 1997 Memorandum Opinion (the "Opinion"),

> [w]hile Dr. Doe's remarks regarding AIDS and ongoing invasive procedures are true, Dr. Doe's statements that he "could not work any more with Dr. Tolman, especially when [he] learned that he has AIDS and continues to perform invasive prosedures [sic] on the [cardiology] patients ... [and he] personally will not want somebody with AIDS to be [his] phisician [sic], let alone being [his] [cardiologist] physician" reasonably imply that Dr. Tolman is unfit to practice as a physician, specifically to perform invasive procedures, and Dr. Tolman is placing his patients at an inappropriate risk by continuing these procedures while having contracted AIDS.

Those inferences discussed in the Opinion are defamatory charges, and there is no genuine issue as to the falsity of those defamatory charges. Plaintiff asks the Court to consider several sources of evidence, including the opinions of several infectious disease specialists, to support his claim that these defamatory charges are false. The Court declines to consider the opinions of experts

---

1. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). Where no genuine issue of material fact exists, the Fourth Circuit has imposed an obligation on the trial judge "to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987).

relayed through other parties that constitute hearsay. *See Maryland Highways Contractors Assn. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir.), *cert. denied*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 325 (1991) (summary judgment affidavits cannot be based upon hearsay.) However, even excluding the hearsay evidence, Dr. Tolman has shown by the overwhelming scientific literature that he is fit to practice medicine and to perform the procedures at issue despite his having AIDS.

The CDC, whose views are relied upon by the medical profession as authoritative,[2] published a report that included recommendations and guidelines for preventing the transmission of the HIV virus and the hepatitis B virus from health care workers to patients. CDC Rec. at 1. The report divides "invasive procedures" into two categories: those that are "exposure prone," and those that are not. It is undisputed that the invasive procedures at issue in this case are not exposure-prone procedures as defined by the CDC. Indeed, there is no genuine dispute that the procedures at issue do not even meet the CDC's definition of "invasive procedure." The CDC states that "[i]nfected HCW's who adhere to universal precautions and who do not perform invasive procedures *pose no risk* for transmitting HIV or HBV to patients." CDC Rec. at 1 (emphasis added). Regardless of whether the procedures at issue are "invasive" under the CDC's definition or not, the CDC has determined that physicians with AIDS, such as Dr. Tolman, are fit to practice medicine and to perform the procedures at issue. Further, this Court has already found that "Dr. Tolman was in compliance with [CDC] guidelines while treating patients and, specifically, performing invasive procedures." Opinion at 583.

Although he admits he has no scientific evidence to support his view, Dr. Doe states that his "personal opinion" is to disagree with the CDC. Dr. Doe further admits he has "no idea" of how much risk the patients experience from being treated by Dr. Tolman and states that "no amount of science ... could make [him] change [his] mind."

The medical profession relies on the guidelines of the CDC and scientific articles such as those cited by Plaintiff, not personal and unfounded opinions, in deciding what level of precaution doctors suffering from AIDS should take in caring for patients. According to the CDC guidelines, Dr. Tolman is fit practice and to perform the procedures.

Courts should generally "defer to the reasonable medical judgments of public health officials," *School Board of Nassau County v. Arline*, 480 U.S. 273, 288, 107 S.Ct. 1123, 1131, 94 L.Ed.2d 307 (1987), such as those made by the CDC. The Fourth Circuit has quoted the very CDC report at issue in this case, and has found that the CDC is the type of public medical health officials to which courts should defer. *Doe v. University of Maryland Medical System Corp.*, 50 F.3d 1261, 1263, 1266 (4th Cir.1995); *see also* 28 C.F.R. Pt. 36, App. B § 36.208 ("Sources for medical knowledge include guidance from public health authorities, such as ... the Centers for Disease Control.") The Virginia Code expressly defers to the CDC in the area of HIV transmission. Virginia Code § 32.1–45.1 (parts A and B.)

The federal courts' obligation to give deference to the CDC's findings means that the CDC's position has prima facie force. *See Abbott v. Bragdon*, 107 F.3d 934, 945 (1st Cir.1997). A defendant may not use unsupported opinions to argue that the CDC is wrong. This principle was clearly articulated by the First Circuit:

> [A] service provider cannot successfully contradict an achieved consensus [of public health officials] simply by proffering an unsupported opinion. This ensures that, despite the rebuttable nature of the presumption [that the public health official is correct], the direct threat defense may not

---

**2.** The CDC position as to HIV-infected health care workers performing non-exposure prone procedures has been adopted or followed by or is consistent with the policies of the Virginia Board of Medicine, the American College of Physicians, the Infectious Diseases Society of America, the American Medical Association, and the Society for Healthcare Epidemiology of America. The CDC view is supported by substantial scientific evidence, including a study of over 22,000 surgeries performed by over 50 HIV-infected surgeons, not one of which resulted in a transmission of HIV.

be used to mask prejudice or unfounded fears. Rather, to frame a genuine issue, an opposing view must be documented by competent countervailing evidence that is directly relevant. Speculative inferences, glancing statistics, unsupported conclusions, and ruminative surmise will not serve.

*Id.* The evidence offered by Defendant consists of the type speculative inferences, glancing statistics, and unsupported conclusions that *Abbott* warns against. Indeed, Doe's effort to rebut the consensus of public health officials is much weaker than the effort that was rejected on summary judgment by the *Abbott* trial court and affirmed on appeal. No reasonable jury could disagree that Defendant's insinuations that Plaintiff was unfit to be a physician, and more specifically, to perform the procedures in question, were false.

The Court has already ruled as a matter of law on two of the Defendant's affirmative defenses, holding that the actions and statements of Defendant are not protected by any privileges, nor are they protected opinions. Order at 4–5. As the Court explained, "mixed opinions" such as those expressed in Dr. Doe's letter are actionable as defamation. Order at 5.

■ The determination of whether statements are defamatory *per se* is for the trial court. *Gazette v. Harris,* 229 Va. 1, 325 S.E.2d 713, 729 (1995). If the statements are actionable *per se,* compensatory damages for injury to reputation, humiliation, and embarrassment are presumed. *Great Coastal Express v. Ellington,* 230 Va. 142, 334 S.E.2d 846, 852 (1985). A plaintiff proves defamation *per se,* without the requirement of special damages, when he proves false words which (1) impute to him unfitness to perform his job, (2) impute to him a lack of integrity in the discharge of his job, or (3) prejudice him in his or her profession or trade. *See e.g., Great Coastal Express, supra* at 849; *Carwile v. Richmond Newspapers,* 196 Va. 1, 82 S.E.2d 588, 591 (1954); *Swengler v. ITT Corp.,* 993 F.2d 1063, 1070–71 (4th Cir.1993). Defendant's insinuations are defamatory *per se* under any of these three prongs. With defamation *per se* established, the only issue

left for the jury is the determination of the appropriate damages. *Id.* In short, Defendant has not demonstrated enough evidence to survive summary judgment, and the Court will GRANT Plaintiff's motion as to Counts 1 and 2.

## B. Intentional Infliction of Emotional Distress (Count 6)

■ "Emotional distress resulting from a non-tactile tort may be compensated if the plaintiff alleges, and proves by clear and convincing evidence, that: [1] the wrongdoer's conduct is intentional or reckless; [2] the conduct is outrageous and intolerable; ■ the alleged wrongful conduct and emotional distress are causally connected; and ■ the distress is severe." *Russo v. White,* 241 Va. 23, 400 S.E.2d 160, 162 (1991) (citing *Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145, 148 (1974)). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo,* 400 S.E.2d at 162 (citing Restatement (Second) of Torts § 46, cmt. d (1965)). The term emotional distress includes "fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Russo,* 400 S.E.2d at 163 (citing Restatement (Second) of Torts § 46, cmt. j (1965)). However, "liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Russo,* 400 S.E.2d at 163.

■ When viewed in Defendant's favor, there is evidence that Dr. Doe's actions and statements were not intentional or reckless. If Dr. Doe's affidavits are accepted as true, he read an article about the transmission of HIV by a dentist in Florida and was genuinely concerned about the well-being of Dr. Tolman's patients. A reasonable trier of fact could also differ as to whether Dr. Doe's conduct was outrageous and intolerable. Indeed, neither the parties nor the Court located any Virginia Supreme Court cases that found conduct to be extreme and outrageous as a matter of law. Finally, a reasonable

trier of fact could differ as to the degree of severity of the Plaintiff's distress. Where the state of mind of a party is decisive as an element of a claim or defense, summary judgment ordinarily will not lie. *Gordon v. Kidd,* 971 F.2d 1087, 1094 (4th Cir.1992) (citation omitted). Hence, Defendant has demonstrated enough evidence on this Count to survive summary judgment, and the Court will therefore DENY Plaintiff's motion as to Count 6.

## IV. CONCLUSION

For the reasons hereinbefore stated, the Court will GRANT Plaintiff's summary judgment motion as to Counts 1 and 2(defamation) and DENY Plaintiff's summary judgment motion as to Count 6 (intentional infliction of emotional distress). An appropriate order shall issue.