**William M. SMITH, as President and on behalf of the New York Metro Area Postal Union, APWU, AFL–CIO and Dennis O'Neil, Plaintiffs,**

**v.**

**John E. POTTER, Postmaster General of the United States, Defendant.**

**No. 01 Civ. 9512(JFK).**

United States District Court, S.D. New York.

July 1, 2002.

Lewis, Greenwald, Clifton & Nikolaidis, P.C., New York City (Louie Nikolaidis, Peter Henner, of counsel), for Plaintiffs.

James B. Comey, United States Attorney for the Southern District of New York, New York City (Daniel S. Alter, Sheila M. Gowan, Assistant United States Attorneys, of counsel), for Defendant.

## *OPINION and ORDER*

KEENAN, District Judge.

Before the Court are the following motions: (1) motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R.Civ.P. 12(b)(6) for failure to state a claim, filed on behalf of defendant, John E. Potter, Post Master General of the United States ("USPS"); and (2) motion to compel inspection and testing of the Morgan Processing and Distribution Center ("Morgan"), pursuant to Fed.R.Civ.P. 34, by plaintiffs, William M. Smith, New York Metro Area Postal Union and Dennis O'Neil ("Plaintiffs"). The motions are opposed and the Court heard oral argument on them on March 12, 2002. For the reasons stated herein, the Court grants the USPS's motion to dismiss the complaint in its entirety and denies as moot Plaintiffs' Rule 34 inspection motion.

### Background

On or about September 20, 2001, mail contaminated with "bacillus anthracus," *i.e.*, anthrax, was processed at the Morgan facility, the mail-processing center serving the New York metropolitan area. *See* Compl. ¶ 18; *Smith v. Potter*, 187 F.Supp.2d 93, 94 (S.D.N.Y.2001). During processing of the tainted mail, anthrax spores were released at that site. *See* Compl. ¶¶ 20–21. The USPS first became aware of a potential threat of anthrax contamination at New York postal facilities on October 19, 2001 after the Centers for Disease Control ("CDC") advised that anthrax-tainted letters were mailed to various New York media outlets. *See* Declaration of Daniel S. Alter, dated January 11, 2002 ("Alter Dec."), Ex. A at 2; *Smith*, 187 F.Supp.2d at 96. Immediately thereafter, USPS officials arranged for anthrax testing at Morgan and postal facilities downstream of Morgan. *See Smith*, 187 F.Supp.2d at 94. This testing revealed the presence of anthrax spores on five pieces of mail-sorting equipment on the third floor in the south building of the Morgan facility. *See id.* As a result of the anthrax contamination, the USPS made available antibiotic prophylaxis (Cipro and Doxycyclene) as well as protective gear to over 7,000 postal employees in New York. *See id.* at 95–96. The USPS, in conjunction with various other federal agencies, commenced cleanup operations, including closing down the affected area and retaining environmental specialists to assist in an anthrax removal project. *See id.* at 96. Thus far, the USPS has incurred over $15 million in investigation and cleanup costs. *See* Alter Dec., Ex. A at 1.

On October 29, 2001, Plaintiffs filed this suit by order to show cause, requesting a preliminary injunction and alleging that the USPS was conducting its New York City postal operations in violation of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq.*, and New York State environmental laws on account of, among other things, the USPS's "handling, storage, treatment,

transportation, or disposal of a hazardous waste." Compl. ¶¶ 60, 65 & 81. In their complaint, Plaintiffs also alleged a common law public nuisance cause of action, a claim that Plaintiffs have since voluntarily dismissed pursuant to Fed.R.Civ.P. 41(a). *See* Notice of Voluntary Dismissal of Fifth Cause of Action (Public Nuisance), dated February 1, 2002.

In early November of 2001, an evidentiary hearing was conducted over several days in relation to Plaintiffs' preliminary injunction motion, which sought mandatory injunctive relief to compel the USPS to shut-down and decontaminate the Morgan facility, to test the James A. Farley postal facility ("JAF"), a post office immediately adjacent to the Morgan facility and connected to it by tunnel, and to test all "downstream" postal facilities serviced by Morgan. *See Smith*, 187 F.Supp.2d at 94. Upon consideration of the evidence adduced at the hearing, I denied Plaintiffs' preliminary injunction motion, finding that the USPS had instituted appropriate remedial measures to diminish any safety risk created by the presence of anthrax at the Morgan facility. *See id.* at 96. Specifically, the Opinion and Order of November 9, 2001 held that: "Thanks to the remedial actions employed, the continued operation of the Morgan facility poses no imminent and substantial risk to health or the environment." *Id.* This holding was predicated, in part, on the fact that no New York postal worker contracted anthrax during the five-week period before the USPS learned of the possibility of anthrax contamination and prior to when the CDC began its investigation of the Morgan-mail trail. *See id.* To date, thankfully no New York postal worker has experienced any anthrax-related health problems as a result · of the tainted mail that passed through the Morgan facility.

## Discussion

### A. Fed.R.Civ.P. 12(b)(6) and 12(b)(1) Standards

On review of a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a court must accept the plaintiff's allegations of fact as true, and draw all reasonable inferences in the plaintiff's favor. *See Hines v. F.J.C. Security Co.*, No. 96 Civ. 2632, 1998 WL 60967, at *1 (S.D.N.Y. Feb. 13, 1998) (citing *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Similarly, review of a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) requires a court to "accept as true all material factual allegations in the complaint." *Shipping Financial Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). When the question to be considered is one involving the jurisdiction of a federal court, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Financial Servs. Corp.*, 140 F.3d at 131 (citing *Norton v. Larney*, 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)). The plaintiff bears the burden of proving that subject matter jurisdiction exists. Moreover, a court may consider materials outside the pleadings, like affidavits and testimony, to resolve issues concerning the existence of jurisdiction. *See Robinson v. Government of Malaysia*, 269 F.3d 133, 141–42 (2d Cir.2001).

### B. Imminent and Substantial Endangerment Claim (Count 1)

In count I of their complaint, Plaintiffs allege that operation of the Morgan facility poses an imminent and substantial danger to public health and the environment in violation of the citizen suit provision of 42

U.S.C. § 6972(a)(1)(B) due to the USPS's handling of the anthrax contamination at that site. On this claim, Plaintiffs seek, among other things, injunctive relief requiring testing, cleaning, inspection and controlled operations of postal facilities. *See* Compl. ¶¶ C–F. Section 6972(a)(1)(B) permits a civil suit against any person or entity, including the United States, "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B) (herein referred to as "imminent-hazard" claim).

Back in November of 2001, in opposing Plaintiffs' motion for a preliminary injunction, the USPS argued that Plaintiffs could not obtain RCRA relief because the anthrax found at the Morgan facility did not constitute "solid waste" as defined by the Act, 42 U.S.C. § 6903(27),[1] because it, the anthrax, had not been discarded within the meaning of the statute. *See* Def.'s Memorandum of Law in Opposition to Pls.' Motion for a Preliminary Injunction at 7–9. In deciding the preliminary injunction motion, there was no need to reach the issue of whether the anthrax found at the postal plant constituted solid waste in view of the finding that no imminent and substantial endangerment to health or the environment existed so as to entitle Plaintiffs to an injunction pursuant to Section

6972(a)(1)(B). *See Smith,* 187 F.Supp.2d at 98. In spite of its initial position, the USPS now concedes that the anthrax discovered at Morgan does constitute "solid waste" as defined by RCRA. *See* 42 U.S.C. § 6903(27).[2]

With respect to the imminent-hazard claim, the USPS argues that this claim is jurisdictionally barred under the RCRA/CERCLA[3] statutory scheme because, upon discovery of the anthrax at the Morgan facility, the USPS immediately initiated a CERCLA Section 104 removal action to eliminate the contamination. Section 113(h) of CERCLA precludes federal courts from exercising jurisdiction (subject to certain exceptions not applicable here) over actions that attack the adequacy of CERCLA Section 104 removal actions: "No Federal court shall have jurisdiction under Federal law ... to review any challenges to removal or remedial action selected under section 104 of this title, ... in any action except one of the following...." 42 U.S.C. § 9613(h). Subsection 6972(b)(2)(B)(ii) of RCRA likewise provides:

> No action may be commenced under subsection (a)(1)(B) of this section if the [EPA] Administrator, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment—
>
> ...

**1.** RCRA defines the term "solid waste" as "any garbage, refuse sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities ..." 42 U.S.C. § 6903(27).

**2.** The USPS makes this concession with a caveat: "[T]he Government does not maintain

that anthrax, *per se,* is a 'solid waste' under RCRA, or that RCRA applies in every context in which anthrax may be present. Whether RCRA applies in any case involving anthrax requires a fact-specific analysis, which in turn considers whether the anthrax at issue has been 'discarded.'" Def.'s Br. at 9.

**3.** "CERCLA" refers to the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601–9675.

(ii) is actually engaging in a removal action under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [CERCLA].

42 U.S.C. § 6972(b)(2)(B)(ii).

The USPS contends that the cleanup measures commenced at the Morgan facility constitute a Section 104 removal action, and, therefore, Plaintiffs' Section 6972(a)(1)(B) imminent-hazard RCRA claim is barred. In pertinent part, Section 104 provides that whenever

> "there is a release or a substantial threat of release into the environment of any pollutant or contaminant which may present imminent and substantial danger to the public health or welfare, the President is authorized to act ... to remove or arrange for the removal of such pollutant or contaminant at any time."

42 U.S.C. § 9604(a)(1).[4]

Plaintiffs assert basically two arguments as to why the Section 113(h) bar does not preclude their RCRA claims: (1) the USPS's response to the anthrax contamination does not constitute a removal action under Section 104 of CERCLA since only the EPA, not the USPS, can conduct such an initiative; and (2) alternatively, that even if the USPS's response constitutes a removal action, Plaintiffs' claims are not barred in light of the timing of their lawsuit. Both arguments fail.

By its terms, Section 104 of CERCLA authorizes the President to initiate a removal action, but the President delegated to all Executive department heads the authority to undertake removal actions under the provisions of Section 104 in certain specified circumstances. In particular, the President delegated his statutory authority to conduct removal actions to "the heads of Executive departments and agencies," in non-emergency situations where there has been a release of a hazardous substance, pollutant, or contaminant "on or the sole source of [such] release is from any facility ... under the jurisdiction, custody, or control of those departments and agencies." Exec. Order 12580, § 2(e)(1), 52 Fed.Reg. 2923, 2924 (Jan. 23, 1987), 1987 WL 181273.[5] In this case, pursuant to the express authority delegated to him by the President in Executive Order 12580, the Postmaster General, head of the USPS (an Executive agency), took action in accord with Section 104 of CERCLA to cleanup the anthrax discovered at the Morgan facility, federal property within the jurisdiction and control of the USPS.

The EPA itself has recognized the result of this delegation of power, advising that it "will respond only to those public health or environmental emergencies that [a] Federal agency [with delegated Section 104 authority to conduct removal actions] cannot respond to in a timely manner." Preamble to Proposed Rules, National Oil and Hazardous Substances Pollution Contingency Plan, 53 Fed.Reg. 51394, 51396 (Dec. 21, 1988), 1988 WL 342624. In addition to the Presidential delegation of Section 104 authority, the record reflects that the USPS

---

**4.** CERCLA defines "pollutant or contaminant" as: "any element, substance, compound, or mixture, including disease-causing agents, which after release into the environment and upon exposure, ingestion, inhalation, or assimilation into any organism, either directly from the environment or indirectly by ingestion through food chains, will or may reasonably be anticipated to cause death [or] disease." 42 U.S.C. § 9601(33).

**5.** For these purposes, the EPA defines "emergency" as "a release or threat of release generally requiring initiation of a removal action within hours of the lead agency's determination that a removal action is appropriate." Preamble to Proposed Rules, National Oil and Hazardous Substances Pollution Contingency Plan, 53 Fed.Reg. 51394, 51396 (Dec. 21, 1988), 1988 WL 342624.

has been coordinating its cleanup efforts in consultation with the CDC, the United States Department of Health and Human Services, the Occupational Safety and Health Administration, the EPA, and the United States Army Corps of Engineers. *See* Alter Dec., Ex. A at 5. To the extent that Plaintiffs argue that the anthrax contamination presented an emergency situation outside the scope of the delegation of authority, this argument fails given that when officials first learned of the presence of anthrax, the situation posed no urgent health risk in light of the fact that five weeks had passed after the anthrax-laced letters passed through the Morgan facility. *See Smith*, 187 F.Supp.2d at 96 ("Because, among other factors, no New York postal worker contracted the disease during the five-week period before the CDC started its investigation of the Morgan-mail trail, Dr. Ostroff concluded that the present risk to New York postal workers is 'very, very low.' " (footnote omitted)).

Plaintiffs further contend that the issue of whether the USPS's anthrax cleanup constitutes a removal action in conformity with CERCLA presents a question of fact unsuited for determination on a motion to dismiss. The Court disagrees. Plaintiffs' argument ignores the circumstances of this case—namely, that I made factual findings in connection with Plaintiffs' preliminary injunction motion. These findings sufficiently establish that the USPS's response to the anthrax contamination meets the requirements of Section 104. This is especially true given the expansive definition of the term "removal" under CERCLA, which includes, among others: "actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment...." 42 U.S.C. § 9601(23). For ex-

ample, in the November 9, 2001 Opinion, this Court found that:

> Once anthrax was found in the mails, the USPS sought direction from the Centers for Disease Control and Prevention ("CDC"), a branch of the United States Department of Health and Human Services, as to the appropriate precautionary actions needed to protect the health and well-being of USPS employees and to reduce the risk of infection. As a result, the USPS provided postal workers with gloves and face masks, along with instructional safety talks. When contaminated mail appeared in New York, the USPS conducted anthrax testing of employees who worked on the processing and delivery routes along which the contaminated letters traveled. When anthrax spores were found on the third floor of Morgan, the USPS closed-down the affected area, again consulted with the CDC, and retained environmental clean-up specialists to clean 120,000 square feet of space.

*Smith*, 187 F.Supp.2d at 95–96 (internal citations omitted).

The anthrax testing and other investigative measures commenced by the USPS on October 21, 2001 qualifies as a removal action under Section 104. *See* Alter Dec., Ex. A at 2. Even apart from this, the Court notes that Plaintiffs here cannot avoid dismissal of their RCRA claim by second-guessing the cleanup procedures commenced by the USPS, for such a tactic eviscerates the purpose of the Section 113(h) bar and flouts Congress's intent in enacting that ban in the first place—namely, to protect ongoing CERCLA cleanups from delay and interference occasioned by disputes over applicable environmental standards. *See Farmers Against Irresponsible Remediation v. EPA*, 165 F.Supp.2d 253, 260–61 (N.D.N.Y.2001); *see also Costner v. URS Consultants, Inc.*, 153

F.3d 667, 674 (8th Cir.1998) ("In enacting section 113(h), Congress intended to prevent time-consuming litigation which might interfere with CERCLA's overall goal of effecting the prompt cleanup of hazardous waste sites.") (internal quotation marks omitted) (quoting *United States v. City & County of Denver*, 100 F.3d 1509, 1514 (10th Cir.1996)).

■ Next, Plaintiffs argue that even if the USPS response constitutes a removal action, Section 113(h)'s ban on challenges to ongoing CERCLA removal actions does not bar their RCRA claims given the timing of their suit. Specifically, Plaintiffs contend that the removal action either did not start till October 31, 2001, (two days after the date on which Plaintiffs filed their complaint, *i.e.*, October 29, 2001) insofar as that is when the administrative record "references the first oral contact with a cleanup contractor," Pls'. Br. at 3 n. 2, or as late as January 2002, when the USPS made the administrative record available to the public. *See id.* at 12–13. Alternatively, Plaintiffs claim that the removal action is now over, and, therefore, the Section 113(h) bar does not apply in this case. Regardless of the version of Plaintiffs' chronology of the Section 104 removal action, their timing argument fails. With respect to the first version, this argument ignores the fact that the USPS initiated testing at the given postal facilities on October 21, 2001, and that such investigative measures easily satisfy the definition of a Section 104 removal action. Plaintiffs' alternative version likewise lacks merit. Although the physical cleaning of the Morgan facility has ended, the USPS removal action has not. For instance, the administrative record for the Morgan cleanup anticipates further activities in connection with the removal project, such as responding to public comments about the measures initiated and implementing developments regarding anthrax-related technologies. *See, e.g.,* Alter Dec., Ex. A at 8–9.

In any event, the Court notes that on October 29, 2001 when Plaintiffs filed this action the USPS removal action had in no way concluded. *See Clinton County Comm'rs v. EPA,* 116 F.3d 1018, 1022 (3d Cir.1997) (en banc) ("[B]ecause plaintiffs' complaint was filed well before the completion of EPA's remedial action at the [given] site, [Section 113(h)] expressly deprived the court of jurisdiction to entertain the portion of plaintiffs' complaint alleging that EPA violated CERCLA's requirements for selection and implementation of cleanup remedies."); *see generally New-man–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) ("[E]xistence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."). Because the plain language of Section 113(h) allows citizen suits challenging a removal action only after the cleanup is actually completed and given that Plaintiffs commenced this action during the pendency of a CERCLA removal action, Plaintiffs' imminent-hazard claim constitutes an improper challenge under Section 113(h). *See Durfey v. E.I. DuPont De Nemours Co.,* 59 F.3d 121, 125 (9th Cir. 1995) (CERCLA Section 113 bars challenges to removal or remedial actions "until completion of cleanup activities"). Based on the foregoing, the Court holds that Plaintiffs' Section 6972(a)(1)(B) imminent-hazard claim constitutes a Section 113(h)-barred challenge to the removal action at the Morgan facility, and, therefore, the Court grants the USPS's motion to dismiss that claim for lack of jurisdiction.

**C. Federal and State Law Claims for Hazardous–Waste Permit Violations (Counts 2, 3, and 4)**

In their complaint, Plaintiffs also bring claims pursuant to Section 6972(a)(1)(A) of

RCRA and Title 9 of Article 27 of the New York Environmental Conservation Law (New York State's statutory hazardous waste program authorized by the EPA pursuant to Section 6926(b) of RCRA), alleging that the manner in which the USPS responded to the anthrax contamination at Morgan violated permit requirements for handling hazardous waste under Subchapter III (also known as Subtitle C) of RCRA, 42 U.S.C. § 6921 *et seq. See* Compl. ¶¶ 61–82.

Section (a)(1)(A) of RCRA allows for civil actions "against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter...." 42 U.S.C. § 6972(a)(1)(A). Subchapter III of RCRA obligates owners and operators of facilities for the treatment, storage, or disposal of hazardous waste to obtain permits pursuant to Section 6925(a) of RCRA. *See* 42 U.S.C. § 6925(a); *see also Orange Env't, Inc. v. County of Orange,* 860 F.Supp. 1003, 1020 (S.D.N.Y.1994). This Subchapter also requires that such individuals comply with standards for transporting hazardous waste promulgated by the EPA. *See* 42 U.S.C. § 6922(a)(5) & 6923(a); *see also* 40 C.F.R. Pts. 262, 263. The EPA, however, can authorize state hazardous waste programs in lieu of the federal program pursuant to Section 6926(b), which provides, in relevant part, that upon authorization:

> Such State is authorized to carry out such program in lieu of the Federal program under this subchapter [III] in such State and to issue and enforce permits for storage, treatment or disposal of hazardous waste ...

42 U.S.C. § 6926(b).

In accordance with Section 6926(b) of RCRA, the EPA authorized the State of New York to administer and enforce a hazardous waste program in lieu of the federal program under Subchapter III. *See* 51 Fed.Reg. 17737 (May 15, 1986); *see also Long Island Soundkeeper Fund, Inc. v. New York Athletic Club,* No. 94 Civ. 0436, 1996 WL 131863, at *7 (S.D.N.Y. Mar.22, 1996). In theory, as the USPS acknowledges, Plaintiffs can seek to enforce EPA-authorized New York hazardous-waste regulations via Section 6972(a)(1)(A) of RCRA. *See* Def.'s Motion to Dismiss Br. at 24 n. 7. But they cannot do so here. This is so for the same reason that Plaintiffs' Section 6972(a)(1)(B) imminent-hazard claim cannot go forward—the Section 113(h) jurisdictional bar. *See McClellan Ecological Seepage Situation v. Perry,* 47 F.3d 325, 329–330 (9th Cir.1995) ("The injection of new [permitting] requirements for dealing with [a site] that [is] now subject to [a] CERCLA cleanup" constitutes a challenge to the CERCLA cleanup, and is barred by Section 113(h)).

As such, Plaintiffs' claims to enforce permit requirements pursuant to RCRA and New York State environmental laws amount to Section 113(h)-barred challenges to the USPS's ongoing removal action. Accordingly, the Court grants the USPS's motion to dismiss counts 2, 3 and 4 for lack of jurisdiction.

### Conclusion

For the reasons set forth above, the Court grants the USPS's motion to dismiss the complaint in its entirety and denies as moot Plaintiffs' Rule 34 inspection motion. The Court orders this case closed and directs the Clerk of Court to remove it from the Court's active docket.

**SO ORDERED.**