**SHIPPING FINANCIAL SERVICES CORPORATION, Plaintiff–Appellant,**

v.

**William J. DRAKOS, Duke Petroleum Transport Corporation and OMI Petrolink Corporation, Defendants–Appellees.**

Docket No. 97–7034.

United States Court of Appeals, Second Circuit.

Argued Sept. 5, 1997.

Decided March 20, 1998.

Frederick A. Lovejoy, Lovejoy & Associates, Westport, CT (Steven P. Calkins, Steven P. Calkins & Associates, P.C., New York City, of counsel), for Plaintiff–Appellant Shipping Financial Services Corporation.

James P. Rau, New York City (Cardillo & Corbett, New York City, of counsel), for Defendants–Appellees William J. Drakos and Duke Petroleum Transport Corporation.

Simon Harter, New York City (Susan Emma Olick, Healy & Baillie, LLP, New York City; John W. Wall, Healy & Baillie, Stamford, CT, of counsel), for Defendant–Appellee OMI Petrolink Corporation.

Before: CARDAMONE, LEVAL, Circuit Judges, and KOELTL,* District Judge.

CARDAMONE, Circuit Judge:

Shipping Financial Services Corporation (Shipping Services), a maritime brokerage company, appeals from a judgment of the United States District Court for the District of Connecticut (Dorsey, C.J.) dismissing its complaint for lack of subject matter jurisdiction. The complaint asserted federal maritime jurisdiction over an alleged breach of a charter party brokerage contract.

■ Drafting a complaint to come within the harbor of admiralty jurisdiction requires careful navigation. Historically, charter party brokerage contracts have been barred entry to this port by the preliminary contract doctrine, a *per se* rule providing that contracts for services leading up to the formation of a maritime contract are not entitled to maritime jurisdiction. The Supreme Court recently decided that another historical *per se* rule, the exclusion for agency contracts from admiralty jurisdiction, should no longer be applied, while leaving open the future of the preliminary contract doctrine. While the continued viability of this doctrine may ultimately need to be decided, this case does not call for such resolution because regardless of the status of the doctrine, plaintiff has failed to establish how the charter party brokerage contract at issue is maritime in nature. Hence, we affirm the district court's dismissal of plaintiff's complaint.

## BACKGROUND

The contract at the center of this legal storm relates to the subchartering of a vessel named the M/V RICH DUKE. In 1984 LQM Associates acted as brokers between the Japanese owners of that vessel and defendant Duke Petroleum Transport Corporation (Duke Petroleum). As a result of these services, Duke Petroleum signed a 12-year charter party, *i.e.*, an agreement to charter the vessel. One of the conditions of the agreement obligated Duke Petroleum to purchase the M/V RICH DUKE at the expiration of the charter party in mid–1998. The price was set in the contract at $2 million. Fortunately for Duke Petroleum, the parties now anticipate that the aptly named vessel will be worth between $20 and $25 million in 1998. What is good news for Duke Petroleum is distressing news to the owners who, according to plaintiff, have engaged in activities aimed at frustrating Duke Petroleum's operation of the M/V RICH DUKE and en-

* Hon. John G. Koeltl, United States District Court Judge for the Southern District of New York, sitting by designation.

couraging the vessel's return to them prior to the 1998 expiration of the charter.

Meanwhile, one of the principals of LQM Associates formed plaintiff Shipping Services as a ship brokerage outfit. In 1994 plaintiff is alleged to have helped defendant William J. Drakos (Drakos) obtain a 50 percent interest in the M/V RICH DUKE charter. Due to the difficulties they encountered in operating the vessel, defendants Duke Petroleum and Drakos are alleged to have contacted Shipping Services to request that it find a subcharter for the remaining years of the original charter. Plaintiff believed the Gulf of Mexico lighterage trade offered the best prospects. In June 1995, with the authority of both defendants, plaintiff contacted defendant OMI Petrolink Corporation (OMI), which operates lightering vessels in the Gulf, regarding the possibility of entering into a subcharter. After requesting and receiving information regarding the M/V RICH DUKE, OMI told plaintiff it was not interested in chartering the vessel. While plaintiff continued to explore other subchartering options, OMI entered into a subcharter with defendants Duke Petroleum and Drakos through OMI's broker, causing Shipping Services to lose an anticipated commission.

As a result, on February 21, 1996, plaintiff filed this breach of contract suit in federal court, claiming admiralty jurisdiction pursuant to 28 U.S.C. § 1333. The complaint, which alleged both breach of contract and unjust enrichment causes of action, named Duke Petroleum and Drakos as defendants. The complaint also alleged a cause of action for tortious interference with a business relationship/business opportunity against defendant OMI. The district court ruled that the charter party brokerage agreement allegedly formed between plaintiff and defendants Duke Petroleum and Drakos did not come within admiralty jurisdiction because the preliminary contract doctrine precluded such jurisdiction. Following defendants' successful motions to dismiss the complaint on that basis, plaintiff brought this appeal.

## DISCUSSION

### I  Standard of Review

A ruling that admiralty jurisdiction does not exist is subject to *de novo* review.

*See Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). But, when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it. *Norton v. Larney*, 266 U.S. 511, 515, 45 S.Ct. 145, 147, 69 L.Ed. 413 (1925).

### II  Agency Contracts and the *Exxon* Decision

Before reaching the merits, we must first review the history of agency contracts in maritime law and changes in that law brought about by the Supreme Court's decision in *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991). Admiralty jurisdiction is afforded under 28 U.S.C. § 1333(1), granting district courts original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction...." With no more guidance than that, federal courts have been left to interpret the extent to which maritime jurisdiction includes contract claims.

Well over a century ago, the Supreme Court decided in *Minturn v. Maynard*, 17 How. (58 U.S.) 477, 15 L.Ed. 235 (1854), that admiralty jurisdiction did not extend to what was essentially the demand of an agent for the payment of sums owed by its principal. The Court believed there was nothing maritime in a suit over "money paid, laid out, and expended ... in paying for supplies, repairs, and advertising of [a] steamboat." *Id.* at 477. *Minturn* was subsequently interpreted in this Circuit to mean that agency contracts were *per se* excluded from admiralty jurisdiction. *See, e.g., Admiral Oriental Line v. United States*, 86 F.2d 201, 203 (2d Cir.1936); *Peralta Shipping Corp. v. Smith & Johnson (Shipping) Corp.*, 739 F.2d 798, 803 (2d Cir.

1984), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1405, 84 L.Ed.2d 791 (1985).

*Exxon,* which came to the Supreme Court from this Circuit, overruled *Minturn* and eliminated the *per se* exclusion. At issue in the case was jurisdiction over a marine fuel requirements contract in which Exxon agreed to supply fuel to a corporation's vessels, either directly at ports where Exxon had its own supplies, or by contract at those ports where Exxon had to rely on local suppliers. *See Exxon,* 500 U.S. at 605, 111 S.Ct. at 2073. When Exxon sued for payment under the contract, the district court for the Southern District of New York permitted Exxon's claim as direct supplier to come under admiralty jurisdiction. But it denied jurisdiction over the claim involving Exxon as agent, citing *Peralta* and that opinion's reliance on *Minturn. See Exxon Corp. v. Central Gulf Lines, Inc.,* 707 F.Supp. 155, 159–61 (S.D.N.Y.1989). After the district court denied a rehearing, 717 F.Supp. 1029 (S.D.N.Y. 1989), we summarily affirmed the limitations on admiralty jurisdiction. *See Exxon Corp. v. Central Gulf Lines,* 904 F.2d 33 (2d Cir. 1990). The Supreme Court thereupon granted *certiorari.*

In an opinion written by Justice Marshall, the Court stated first that the "fundamental interest" giving rise to admiralty jurisdiction is "the protection of maritime commerce." *Exxon,* 500 U.S. at 608, 111 S.Ct. at 2074–75. It then analyzed the underlying rationales of *Minturn* to determine their validity in light of this fundamental interest. Two explanations were identified: (1) a demand for payment of monies owed could be heard readily at common law but not under admiralty jurisdiction; and (2) the vessel owners in *Minturn* had not pledged the vessel as security for the balance of accounts between the agent and principal and therefore the contract could not be deemed maritime in nature. *See Exxon,* 500 U.S. at 609, 111 S.Ct. at 2075.

The Court then turned to subsequent case law and found that each of these rationales had since been discredited. *See id.* at 610, 111 S.Ct. at 2075–76. Concluding that *Minturn* was no longer good law, the Court stated that "the trend in modern admiralty case law ... is to focus the jurisdictional inquiry upon whether the nature of the transaction was maritime." *Id.* at 611, 111 S.Ct. at 2076. It expressed a preference for a "nature and subject-matter" approach as being the "crucial consideration" in determining whether admiralty jurisdiction exists, and warned that "[i]t is inappropriate, therefore, to focus on the status of a claimant. . . ." *Id.* at 611–12, 111 S.Ct. at 2076. This directive to examine each agency contract, for purposes of characterizing the nature of the services involved, eliminated a *per se* exclusionary rule.

Decisions within this Circuit foreshadowed the holding in *Exxon.* In one case, we cited earlier Supreme Court precedent that described the jurisdictional inquiry as looking to "the subject-matter, the nature and character of the contract ... the true criterion being the nature of the contract, as to whether it have reference to maritime service or maritime transactions." *Peralta,* 739 F.2d at 801 (quoting *North Pacific S.S. Co. v. Hall Bros. Marine Ry. & S. Co.,* 249 U.S. 119, 125, 39 S.Ct. 221, 222–23, 63 L.Ed. 510 (1919)). We reiterated this approach in *Ingersoll Milling Mach. Co. v. M/V Bodena,* 829 F.2d 293, 302 (2d Cir.1987) ("[T]he focus of our inquiry must be not on the name assigned to the contract, but rather on the nature of the services to be performed. It is the character of the work to be performed under the contract that is determinative of whether the agreement was maritime.").

In light of this precedent, it is clear that agency contracts can be a basis for admiralty jurisdiction if the "nature and subject matter" of the contract is maritime.

## III   Preliminary Contract Doctrine

With the Supreme Court having disposed of the agency contract exception, we turn our attention to the longstanding preliminary contract doctrine, another *per se* exception. The doctrine in this Circuit—set forth more than a century ago and upheld since—provides in pertinent part that disputes arising out of preliminary services contracts do not invoke maritime jurisdiction. *See, e.g., The Thames,* 10 F. 848 (S.D.N.Y.1881) ("The distinction between preliminary services leading

to a maritime contract and such contracts themselves ha[s] been affirmed in this country from the first...."); *The Harvey and Henry*, 86 F. 656, 657 (2d Cir.1898); *Christman v. Maristella Compania Naviera*, 293 F.Supp. 442, 443 (S.D.N.Y.1968); *Peralta*, 739 F.2d at 801–02; *Boyd, Weir & Sewell, Inc. v. Fritzen–Halcyon Lijn, Inc.*, 709 F.Supp. 77, 79 (S.D.N.Y.1989). The rationale behind the doctrine is that services that are preliminary to, as opposed to being a part of, maritime contracts are too remote to be heard as maritime claims. *See The Thames*, 10 F. at 848. The doctrine has been applied somewhat mechanically to brokerage agreements involving ship charters. *See, e.g., Christman*, 293 F.Supp. at 443; *Boyd*, 709 F.Supp. at 79.

Although *Exxon* instructs that the *per se* agency contract exception no longer applies, it does not necessarily require a similar fate for the preliminary contract doctrine. Before *Exxon*, our opinions melded the two doctrines together. *See Exxon*, 500 U.S. at 607 n. 3, 111 S.Ct. at 2074 n. 3 (citing *Cory Bros. & Co.*, 51 F.2d at 1012, and explaining that the *per se* agency exception had been "fused" with the preliminary contract rule). *Exxon* now forces us to disentangle them and consider the possibility that while agency contracts are not a *per se* exception to admiralty jurisdiction, preliminary contracts may still be an exception to such jurisdiction.

The Supreme Court gives no hint as to whether the abolition of one *per se* rule requires the abolition of all *per se* rules as they apply to admiralty jurisdiction. Other than characterizing the *Exxon* opinion as a "narrow one," 500 U.S. at 612, 111 S.Ct. at 2076–77, the Court explicitly stated that it was not ruling on the merits of the preliminary contract doctrine. *See id.* at 613 n. 7, 111 S.Ct. at 2077 n. 7 ("This Court has never ruled on the validity of the preliminary contract doctrine, nor do we reach that question here. However, we emphasize that *Minturn* has been overruled....").

IV Analyzing Plaintiff's Complaint Under the Preliminary Contract Doctrine and Under the Nature and Subject Matter of the Contract

Shipping Services argues on appeal that under *Exxon*, the district court was obligated to look at the nature and subject matter of the brokerage agreement in determining whether it had admiralty jurisdiction, rather than foreclosing jurisdiction simply by applying the preliminary contract doctrine. Such analysis, Shipping Services maintains, would have revealed that the brokerage agreement was maritime in nature and thereby qualified for admiralty jurisdiction. Defendants of course argue that the preliminary contract doctrine retains its validity post-*Exxon*.

If we were to resolve the issue regarding the future of the preliminary contract doctrine, we would have to sail into uncharted waters, for we have not had occasion to write on the question of whether a charter party brokerage contract comes within admiralty jurisdiction since *Exxon* was decided. And, although *Exxon* plainly discourages *per se* exclusions to maritime claims, it stops short of entirely eliminating the preliminary contract doctrine. We pass on this opportunity because no matter which course of logic we follow, we are nevertheless drawn to the same conclusion: plaintiff has failed to show that its brokerage agreement is sufficiently maritime in nature to come within the maritime jurisdiction. Hence, we need not reach or decide the issue of whether *Exxon* precludes application of the preliminary contract doctrine. Under either the nature and subject matter analysis or the preliminary contract doctrine, this particular charter party brokerage contract fails to qualify for admiralty jurisdiction.

A. *Preliminary Contract Doctrine*

■ Plaintiff's first cause of action is breach of contract—it seeks to recover a lost commission. We first stated that admiralty jurisdiction does not extend to a charter brokerage contract in 1898. *See The Harvey and Henry*, 86 F. at 657. Since then, that principle continued to be applied among the district courts in this Circuit. For example, *Boyd* holds that admiralty jurisdiction does not extend to a charter broker's claim for commissions from the vessel owner for whom it arranged a charter. The court reasoned that "acting as a chartering broker is a pre-

liminary matter and as such may not support admiralty jurisdiction." *Boyd,* 709 F.Supp. at 79. Plaintiff presents an identical claim. If *The Harvey and Henry* and *Boyd* were to remain good law after *Exxon,* they would apply to bar this claim from maritime jurisdiction.

### B. *Nature and Subject Matter Analysis*

■ Plaintiff has not pointed to any written evidence of a contract between itself and the defendants. For purposes of reviewing the motion to dismiss for lack of subject matter jurisdiction, we therefore take as true the facts alleged in plaintiff's complaint. Those facts are as follows: Duke Petroleum and Drakos asked plaintiff to find a subcharter; plaintiff agreed and thought the Gulf lighterage trade offered the best prospect for subchartering the M/V RICH DUKE; and defendants authorized plaintiff to contact defendant OMI, a Gulf operator, among others, with regard to signing a subcharter. Essentially then, the contract between plaintiff and defendants involves plaintiff acting as a broker for Duke Petroleum and Drakos. Shipping Services undertook no other responsibilities. Nor does plaintiff's purported role in giving advice about seeking a subcharter in the Gulf lighterage trade elevate its status to anything other than a broker. Plaintiff makes no other affirmative showing that its contract is "maritime in nature."

### V Plaintiff's Remaining Causes of Action

■ The district court also correctly determined that the plaintiff's unjust enrichment claim does not fall within admiralty jurisdiction. *See Peninsular & Oriental Steam Navigation Co. v. Overseas Oil Carriers, Inc.,* 553 F.2d 830, 835 (2d Cir.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 131 (1977) ("[Q]uasi-contractual claims may be considered by the federal courts in admiralty if they arise out of maritime contracts ... or other inherently maritime transactions."). Because plaintiff has not shown that its contractual services involved maritime commerce, neither does plaintiff's claim for unjust enrichment arising out of that agreement come within admiralty jurisdiction.

Regarding the tortious interference claim asserted against defendant OMI, none of the briefs submitted address the issue. Considering that OMI included extensive research in its memorandum of law to the district court in support of its motion to dismiss, and that plaintiff did not attempt to refute this argument either in the court below or on appeal, we affirm Judge Dorsey's conclusion that admiralty jurisdiction is not present.

### CONCLUSION

We reiterate the fact-specific nature of our decision. Having failed to establish maritime jurisdiction under either the *Exxon* nature and subject matter test or the preliminary contract doctrine, plaintiff may not enjoy the benefit of bringing this case in federal court. In reaching this conclusion, we make no ruling as to the continuing validity of the preliminary contract doctrine, or the potential for other charter party brokerage agreements to qualify for admiralty jurisdiction.

Accordingly, the judgment dismissing plaintiff's complaint is affirmed.