**COUNTY AMBULANCE SERVICE, INC., Daniel J. Roberts, and Jeffrey M. Roberts, as Assignees of Interest, Plaintiffs,**

v.

**Tommy G. THOMPSON, Secretary, United States Department of Health & Human Services, and Empire Medicare Services, Defendants.**

**No. 01 CV 2320(ADS)(WDW).**

United States District Court, E.D. New York.

Sept. 11, 2002.

**310**

Jeffrey M. Roberts, Hauppauge, NY, Pro Se, and Attorney for Plaintiff County Ambulance Service, Inc.

Daniel J. Roberts, Henderson, NV, Pro Se.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, Central Islip, NY, Attorney for the Defendants, by Gail A. Matthews, Assistant United States Attorney.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On April 13, 2001, Jeffrey M. Roberts ("Jeffrey Roberts"), Daniel J. Roberts ("Daniel Roberts") (collectively, "the Roberts"), and County Ambulance Service, Inc. ("County Ambulance") (collectively, the "plaintiffs") commenced this action by filing a complaint alleging that Tommy G. Thompson, Secretary of the United States Department of Health and Human Services ("HHS" or a "defendant") and Empire Medicare Services ("Empire" or a "defendant") (collectively, the "defendants") improperly recalculated the amount of a Medicare overpayment to County Medical Supply & Ambulance Service, Inc. ("County Medical") following the decision of an Administrative Law Judge ("ALJ") regarding that overpayment. The plaintiffs ask this Court to issue a writ of mandamus directing the defendants to: (1) abide by the decisions of the Administrative Law Judge ("ALJ"); (2) adhere and follow their own rules and regulations; (3) return all Medicare funds improperly recouped "less the $4,920.46 as determined by the ALJ"; and (4) refund all Medicaid funds that were held by the New York State Department of Health ("DOH") at the defendants' request. Presently before the Court is a motion by the defendants to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") on the ground that the Court lacks subject matter jurisdiction over the action.

### I. BACKGROUND

At the outset, the Court notes that when deciding a motion to dismiss for lack of subject matter jurisdiction, it "must accept all material factual allegations in the complaint." *Shipping Financial Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). In addition, the Court may consider materials outside the pleadings, such as affidavits and testimony, to resolve disputed jurisdictional fact issues. *See Robinson v. Government of Malaysia,* 269 F.3d 133, 141–42 (2d Cir.2001); *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). Accordingly, the following factual allegations are taken from the complaint and exhibits attached thereto; the Declaration of Jean Stone ("decl."), the Program Integrity Senior Specialist for the Centers for Medicare and Medicaid Services, submit-

ted in support of the defendants' motion to dismiss the complaint and the exhibits attached to the declaration; and the Medicare statute and regulations.

### A. The Statutory and Regulatory Framework

Medicare, the federal medical insurance program for the aged and disabled, is governed by Title XVIII of the Social Security Act (the "Act"), 42 U.S.C. §§ 1395–1395gg. The Centers for Medicare & Medicaid Services ("CMS"), formerly the Health Care Financial Administration ("HCFA"), *see* Fed.Reg. 35437 (July 5, 2001), is responsible for administering the Medicare Program. Part A of the Medicare Program ("Hospital Insurance Benefits") authorizes payment for primary institutional care, including hospitals, skilled nursing facilities, and home health care. *See* 42 U.S.C. § 1395c *et seq.* Part B of the Medicare Program ("Supplementary Medical Insurance") authorizes payment for various medical and other health services and supplies, including outpatient services. *See* 42 U.S.C. § 1395j, *et seq.* This case involves Part B of the Medicare Program because the services at issue are outpatient ambulance services provided to non-hospitalized beneficiaries.

HHS contracts with private insurance carriers to perform various functions necessary for the efficient administration of Part B of the Medicare Program. *See* 42 U.S.C. § 1395u. These functions include determining whether claimed services are medically necessary, calculating the amounts of any Part B payments due, and paying claims out of the Medicare Trust Funds. *See* 42 U.S.C. § 1395u(a)(1); 42 C.F.R. Part 405, Subpart E; 42 C.F.R. Part 414; 42 C.F.R. §§ 421.5, 421.200. Empire is the carrier responsible for processing and paying the Part B claims at issue in this case.

Due to the large number of Medicare claims submitted annually to carriers, "it is virtually impossible to examine each bill ... in sufficient detail to assure before payment in every case that only medically necessary services have been provided." HCFA Ruling 86–1. Therefore, Section 1842(a) of the Social Security Act, 42 U.S.C. § 1395u(a), authorizes carriers to conduct post-payment audits of providers' records to ensure that proper payments have been made. If, following an audit, a carrier determines that an overpayment has been made, the carrier may offset or recoup Medicare payments from the provider. *See* 42 C.F.R. § 405.371(a)(2). An "offset" is "[t]he recovery by Medicare of a non-Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness." 42 C.F.R. § 405.370. A "recoupment" is "[t]he recovery by Medicare of any outstanding Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness." 42 C.F.R. § 405.370.

### B. The Overpayment Determination

County Medical, which is not a party to this action, was an ambulance company that operated in New York and was owned by Leonard Roberts and Ephraim Goldberg. County Medical was dissolved in 1991.

County Ambulance, which is a plaintiff in this case, is an ambulance company that operates in New York and is owned by Leonard Roberts and Ephraim Goldberg. Daniel Roberts and Jeffrey Roberts are the president and vice-president, respectively, of County Ambulance and effectively operate and manage the company. Following the dissolution of County Medical in 1991, County Ambulance billed Medicare using County Medical's provider number for services rendered by County Ambu-

lance. Neither County Medical nor County Ambulance informed Empire or CMS that County Medical had dissolved and that County Ambulance was using County Medical's provider number.

In a letter dated August 7, 1995, Empire notified County Medical that it had performed an audit of the County Medical claims that were processed between October 1, 1991, and December 30, 1994. Empire advised County Medical that it had identified a tentative overpayment in the amount of $2,622,516. Empire stated that the purpose of the audit was to determine the medical necessity of the ambulance services billed and to commence recovery actions on payments it determined were inappropriate.

Empire said that it had used specific scientific sampling techniques, commonly referred to as stratified variable random sampling, to determine the overpayment and explained how those techniques were applied to County Medical's claims. Empire stated that it had stratified the universe of finalized claims processed between October 1, 1991 and December 30, 1994 into four strata, one for each year of the processed claims reviewed. Out of the universe of 16,293 paid claims, for which Medicare had paid the sum of $3,354,624.33, Empire selected a statistically valid stratified random sample of 377 claims for review, which were also stratified according to the year the claims were processed. These 377 claims contained 820 paid services.

Empire requested the Pre–Hospital Care Reports ("PCRs") for each of the 377 claims in the sample and reviewed the PCRs to determine if the services reported in them were covered, medically necessary, and payable. Empire concluded that of the 377 claims containing 820 paid services, 77.7% of the sampled services, or 637 services, lacked "medical necessity". Empire also found that 4.6% of the sampled services, or 38 services, did not have the PCRs needed to determine whether the services rendered were medically necessary. Empire therefore disallowed these services on the basis that they lacked the proper documentation. Empire determined that only 17.7% of the services within the sample of claims, or 145 services were allowable.

Empire informed County Medical that the company could submit documentation it thought might affect Empire's final determination of an overpayment. County Medical submitted additional paperwork, and in a letter dated April 3, 1996, Empire informed County Medical that it had revised the original overpayment amount to the sum of $2,049,506. Empire informed County Medical that the company could submit additional comments that it believed should be taken into consideration and that might affect Empire's final overpayment determination.

In a letter dated April 30, 1996, Jeffrey M. Roberts requested a carrier fair hearing regarding the overpayment. Responding in a letter dated July 9, 1996, Empire provided County Medical with its final determination that County Medical had received an overpayment in the sum of $1,882,170. Empire stated that this determination was based on a stratified variable random sampling technique, explained the technique, and attached documents and spreadsheets that demonstrated how the technique was applied to each of the 377 claims. Empire advised County Medical that if full payment was not received within 30 days, the amount due to Empire would be offset against future benefits due County Medical under the Medicare Program. Empire informed County Medical that if the company believed that an offset should not be put into effect, the company should notify Empire within 15 days.

Empire also acknowledged Jeffrey Roberts' April 30, 1996 letter and stated that "this constitutes a formal request for a fair hearing and your file has been forwarded to our Fair Hearing Department for handling."

## C. Recoupment of the County Medical Overpayment Against County Ambulance

While the parties pursued their administrative remedies regarding the final overpayment determination, CMS attempted to recoup the overpayment from County Medical. In connection with its recoupment efforts, CMS began an investigation into County Medical in January 1997. During this investigation, CMS discovered that County Medical had dissolved in 1991 and that the Medicare checks sent to County Medical were being cashed by County Ambulance.

In a letter dated January 17, 1997 and addressed to County Ambulance, Empire stated that an offset had been put in place under County Medical's provider number. Empire notified County Ambulance of its intention to begin offsetting claims submitted by County Ambulance to recoup the $1,882,170 overpayment to County Medical. Empire said that it found "no indication of any material change in your company. Rather, we see only an address change and a correction to your tax identification number." Empire stated that, within 15 days, County Ambulance could notify Empire of any reasons the offset should not be put in place.

In a letter dated January 27, 1997, Daniel Roberts, writing on behalf of County Ambulance, told Empire that County Ambulance was not liable for the County Medical overpayment because it is "separate and distinct". Daniel Roberts stated that County Ambulance has not submitted claims to Empire and, therefore, was not subject to the review of claims at issue.

Daniel Roberts advised Empire that "any attempt by you to unilaterally offset monies against such a separate and distinct company and provider number would be completely contrary to law."

In a letter dated March 13, 1997, CMS asked County Ambulance to submit documentation so that CMS could render a definitive decision as to whether County Ambulance and County Medical were separate and distinct entities. CMS requested (1) a sales agreement or contract of sale between County Ambulance and County Medical; (2) dissolution papers for County Medical; (3) leasing agreements for real estate for both companies from 1991–1995; (4) invoices for both companies related to day-to-day; (5) loan applications for both companies during 1991–1995; (6) canceled corporate checks for both companies for 1991 through 1995; (7) ambulance service certification papers from the DOH for both entities for 1991 through 1995; (8) corporate bank account statements for each company for 1991 through 1995; and (9) federal and state tax filings for both companies for 1991 through 1995 (decl.ex.G).

In a letter dated March 14, 1997, CMS officially notified County Ambulance that it had received documentation supporting its collection efforts against County Ambulance for the overpayment determined against County Medical. CMS requested that County Ambulance submit the documentation described in its March 13, 1997 letter no later than March 28, 1997. CMS stated if County Ambulance did not provide "adequate information to counteract the documentation currently in our possession, we will institute an immediate offset of all current and future claims." CMS determined that County Ambulance failed to provide adequate information, and on March 31, 1997, Empire implemented the Medicare offset against County Ambulance

to recoup the overpayment to County Medical.

In a letter to County Ambulance dated September 12, 1997, CMS stated that Empire had been trying to recoup the overpayment to County Medical by offsetting claims to County Ambulance, but County Ambulance had not submitted sufficient Medicare claims to enable Empire to recoup the overpayment. Therefore, CMS explained that pursuant to 42 C.F.R. ¶ 447.30(d), it had asked the DOH to reduce and withhold the Federal matching share of Medicaid payments made by the DOH to County Ambulance.

### D. The Appeal of the County Medical Supply Overpayment

As noted above, County Medical contested the $1,882,170 overpayment, and on October 17, 1996, a Medicare hearing officer held a fair hearing. In a decision dated October 19, 1996, the hearing officer affirmed in total the $1,882,170 overpayment determined by Empire. County Medical filed a timely notice of appeal requesting a hearing before an ALJ.

In a decision dated March 10, 1998, after a hearing, the ALJ found in favor of County Medical, holding that the overpayment had not been established. The ALJ further held that even if the overpayment had been established, it was waived pursuant to Section 1870(c) of the Social Security Act because the provider was without fault, and "it would be against equity and good conscience to require repayment, and/or would defeat the purposes of [the Medicare Act]." By letter dated April 17, 1998, CMS appealed the ALJ's decision to the HHS Departmental Appeals Board, Medicare Appeals Council ("MAC").

In a decision dated June 19, 1998, the MAC vacated the ALJ's decision and remanded the case to the ALJ for further proceedings. The MAC determined, among other things, that the ALJ had

improperly assumed an appellate role in reviewing the hearing officer's decision when he was required to review each of the contested claims *de novo*.

In accordance with the MAC's decision, the ALJ conducted hearings regarding each of the 227 contested claims in the spring and summer of 1999. In connection with these hearings, County Medical disputed Empire's use of the stratified variable random sampling technique to re-extrapolate the overpayment. On or about June 30, 1999, County Medical submitted an affidavit and memorandum from one Herbert Sherman, Ph.D. in support of its position.

In a letter dated August 12, 1999, the ALJ requested Empire's response to County Medical's challenge of the statistical procedure used in calculating the overpayment and forwarded to Empire Dr. Sherman's affidavit and memorandum. On September 16, 1999, Empire submitted a memorandum from one Martin Lee, Ph.D. defending its use of the statistical extrapolation.

From July 1, 1999 until November 13, 2000, the ALJ issued 227 decisions, one for each of the disputed claims. The ALJ found in favor of County Medical on 211 of the 227 claims and in favor of Empire on the remaining 16. Rather than include all 227 decisions in their papers, the plaintiffs have attached a copy of the first and lead decision, which was the audited claim for one Katherine Kowalski.

In all of his decisions, the ALJ noted that the amount of the overpayment claimed by CMS is based on "a statistical procedure involving random sampling." The ALJ stated that "courts have sanctioned [CMS's] right to use such procedures, but reserved to challengers the right to challenge the mechanics of the procedure." The ALJ explained that County Medical had challenged Empire's

use of statistical re-extrapolation and had submitted evidence in support of its position, which the ALJ attached as an exhibit to his decision. The ALJ noted that Empire responded to County Medical's argument by submitting its own evidence defending its use of the statistical re-extrapolation, which the ALJ also attached as an exhibit to his decision.

The ALJ held that "County's presentation [was] insufficient to overcome the result obtained by Empire, since for aught County's presentation shows, using the propounded technique the same results, or results varying only insignificantly, may ensue." The ALJ instructed Empire that when it recalculated the amount of County Medical's overpayment it must exclude from the re-extrapolation those claims that Empire had previously denied but that the ALJ now determined were allowed. In particular, the ALJ held:

> This is not to say that in any calculation of overpayment, claims previously denied and included in the statistical calculation of overpayment should still be included in such calculation; [CMS] must take into account all audited claims previously denied, and now allowed, as this one is.

(Exhibit A to the Complaint). The ALJ issued the same holding regarding the use of statistical re-extrapolation in all 227 decisions, including those in which he reversed Empire's denial of payment.

Neither County Ambulance nor CMS appealed any of the ALJ's decisions within the statutory 60–day time frame. In a letter to CMS dated January 16, 2001, County Ambulance claimed that "[a]s a result of the ALJ's decisions, the overpayment determination was reduced from $1,882,170 to $5,517.34." County Ambulance demanded that CMS return all of the money withheld to recoup the $1,882,170 overpayment "less the $5,517.23." County

Ambulance mailed similar letters, dated February 13 and March 1, 2001 to CMS.

In a letter to County Ambulance dated February 26, 2001, CMS explained that the process of redetermining the overpayment was taking longer than usual because "[t]he ALJ divided up the 227 claims and issued 11 different decisions over a protracted period of time. . . . In response to each of the 11 ALJ decisions, Empire had to adjust the claim sample, recalculate and extrapolate the error rate and calculate a revised overpayment amount." CMS also informed County Ambulance that "there is no refund due." In particular, CMS stated that when it extrapolated the claims, which the ALJ had found Empire properly denied, to the universe of claims, an overpayment continued to exist. CMS informed County Ambulance that it would receive the final overpayment calculation shortly after Empire completed its final adjustments.

In a letter dated March 22, 2001, Empire notified County Ambulance of its final overpayment determination (compl.¶ 28, ex. B). The letter informed County Ambulance that "[i]n compliance with [CMS] guidelines, the Administrative Law Judge's decisions have been effectuated in the order they were received. . . . The receivable . . . was adjusted and reduced from the original overpayment amount of $1,882,170 to $128,125." The notice detailed how the overpayment had been recalculated using the stratified variable random sampling technique on the dates the ALJ's decisions were effectuated. Empire concluding by informing County Ambulance that it had collected the amount of $100,476.40 against the overpayment, leaving a balance of $27,648.60 plus interest in the amount of $7,534.32, for a total balance of $35,182.92.

### E. The Complaint

Several weeks later, on April 13, 2001, the plaintiffs filed the complaint in this action. In a section of the complaint titled, "Legal Issues To Be Determined," the plaintiffs allege Empire's use of the statistical extrapolation technique to determine the final overpayment following the ALJ's second decision was erroneous because it violated the ALJ's decisions and CMS regulations. In particular, the plaintiffs assert that CMS Ruling 86–1 permits the use of statistical extrapolation when, among other things, the claims reflect a pattern of erroneous billing or overutilization. The plaintiffs further allege that the ALJ found "no pattern of erroneous billing." Therefore, contend the plaintiffs, Empire's use of the statistical extrapolation technique was improper.

The plaintiffs predicate subject matter jurisdiction on the mandamus statute, *see* 28 U.S.C. § 1361 (compl.¶ 8). They seek a writ of mandamus directing the defendants to: (1) abide by the decisions of the ALJ; (2) follow CMS ruling 86–1; (3) return all Medicare funds that have been withheld "less the $4,920.46 as determined by the ALJ"; and (4) return all Medicaid funds that have been withheld by the DOH.

### F. The Withheld Medicaid Funds

In a letter dated May 31, 2001, Empire informed County Ambulance that CMS had recently learned that the DOH had withheld the sum of $40,045.60 in Medicaid funds in accordance with Empire's request that it do so. Empire explained that it applied the withheld Medicaid funds against the overpayment "on the date that the Medicaid offset should have been taken" and had "re-calculated the outstanding principal and accrued interest accordingly." Empire calculated that it had overcollected the sum of $16,503.69 and issued a check to County Ambulance for that amount. Empire informed County Ambu-

lance that as a result of the offset of the withheld Medicaid funds, County Ambulance's current liability to the Medicare program was fully satisfied.

### G. The Defendants' Motion

Presently before the Court is a motion by the defendants to dismiss the complaint pursuant to Rule 12(b)(1) on the ground that the Court lacks subject matter jurisdiction to entertain the plaintiffs' claim that because Empire's re-extrapolation of the overpayment was allegedly contrary to the ALJ's decisions and to CMS Ruling 86–1, County Ambulance is entitled to the recover the original overpayment minus the approximate sum of $5,000. In particular, the defendants argue that the plaintiffs are required to exhaust their administrative remedies regarding their claim before seeking judicial review. The defendants further assert that the plaintiffs failed to do so because they did not appeal the ALJ's decisions directing CMS to re-extrapolate the overpayment. The defendants also argue that the complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim upon which relief can be granted, and that in any event, the individual plaintiffs lack standing to sue.

## II. *DISCUSSION*

█ As noted above, when considering a motion to dismiss the complaint, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. *See Robinson v. Government of Malaysia,* 269 F.3d 133, 141–42 (2d Cir.2001); *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). However, hearsay statements in affidavits may not be considered. *See Kamen v. AT & T,* 791 F.2d 1006, 1011 (2d Cir.1986). Under Rule 12(b)(1), the

Court must accept as true all material factual allegations in the complaint. *See Shipping Financial Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). However, because "jurisdiction must be shown affirmatively," the Court will not draw from the "pleadings inferences favorable to the party asserting it." *Id.* Rather, the plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Makarova,* 201 F.3d at 113 (citing *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996)).

■ The plaintiffs predicate subject matter jurisdiction on the mandamus statute, which provides a district court with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[I]t is settled in this and other circuits that … mandamus jurisdiction is available under circumstances where the writ properly would issue." *City of New York v. Heckler,* 742 F.2d 729, 739 (2d Cir.1984). "A writ of mandamus will not issue unless (1) the plaintiffs have a right to have the act performed, (2) the defendant is under a clear nondiscretionary duty to perform the act requested, and (3) the plaintiff has exhausted all other avenues of relief." *Heckler,* 742 F.2d at 739. The Court finds that this is not a case in which the writ would properly issue and, therefore, it lacks subject matter jurisdiction under the mandamus statute.

First, the plaintiffs have not exhausted all other avenues of relief. The plaintiffs' attack Empire's second, final overpayment determination on the ground that Empire allegedly failed to adhere to CMS Rule 86–1 and the ALJ's instructions when it determined the amount of the overpayment. A party that is dissatisfied with an overpayment determination can request a fair hearing before the insurance carrier if the amount in controversy is $100 or more. *See* 42 C.F.R. §§ 405.815, 405.855. A party dissatisfied with the decision of the carrier hearing officer can request a hearing before an ALJ if the amount in controversy is $500 or more. 42 C.F.R. §§ 405.815, 405.855. A party may appeal an unfavorable decision of an ALJ by requesting review by the MAC. 42 C.F.R. §§ 405.815, 405.856. The dissatisfied party can seek judicial review of the MAC decision by filing a civil action in federal court. 42 C.F.R. § 405.857.

The parties in the instant case pursued this administrative review process following Empire's July 9, 1996 overpayment determination. County Ambulance requested a fair hearing and appealed the Medicare hearing officer's decision to an ALJ. CMS appealed the ALJ's decision to the MAC, which vacated the decision and remanded the case to the ALJ to review the 227 claims *de novo.* The ALJ approved Empire's denial of 16 claims and reversed Empire's denial of 211 claims. The ALJ also affirmed Empire's use of the statistical extrapolation technique to determine the overpayment and instructed Empire to recalculate the overpayment based on 16 claims rather than 227. Empire recalculated the overpayment and sent County Ambulance a second final determination notice.

Now, the plaintiffs are dissatisfied with the manner in which Empire reached its second, final overpayment determination. Therefore, the plaintiffs can request a fair hearing before the carrier, which it can appeal to the ALJ. If the plaintiffs are dissatisfied with ALJ's decision, they could appeal to the MAC and, ultimately, could file an action in this Court. However, the plaintiffs pursued none of these avenues of relief and, instead, filed an action in this Court. Because the plaintiffs clearly have other avenues through which they can pur-

sue their claim—that Empire should not have implemented the statistical extrapolation technique when it issued the second overpayment determination—a writ of mandamus should not be granted in this case. *See Abbey v. Sullivan*, 978 F.2d 37, 47 (2d Cir.1992) (holding that in a case involving Part B Medicare claims, where the plaintiffs have failed to exhaust their administrative remedies, mandamus relief is unavailable because "one of the requisites for obtaining a writ of mandamus is that the plaintiff have exhausted all other remedies"); *Heckler*, 742 F.2d at 739; *Diagnostic Cardioline Monitoring of New York, Inc., v. Shalala*, Civ. No. 99 CV 5686, 2000 WL 1132273 *7 (E.D.N.Y. June 26, 2000) (holding that where the plaintiff has an adequate remedy to redress the alleged violations under the Social Security Act, mandamus relief is unavailable).

The plaintiffs argue that they have no other avenue for relief because they could not appeal the ALJs eleven decisions in that they were "fully favorable" to them. The Court finds that this argument misses the mark. The plaintiffs present claim did not arise until after Empire issued the second, final overpayment determination because the plaintiffs do not argue that the re-extrapolation technique is, in itself, flawed, which was one of their assertions to the ALJ. Rather, they claim that Empire's use of the technique in making the second, final overpayment determination was an erroneous application of the ALJ's decision and CMS Rule 86–1. As explained above, the plaintiffs have ample arena in which this claim can be heard.

Second, the plaintiffs have not shown that they have a right to recover the money Empire applied to the overpayment, minus the sum of $4,920.46. In support of this assertion, the plaintiffs claim that Empire should not have used the statistical extrapolation technique in recalculating the overpayment because CMS Ruling 86–

1 permits use of the technique when the claims reflect a pattern of erroneous billing, and the ALJ found "no pattern of erroneous billing". The plaintiffs argument is without merit because it is based on a statement by the ALJ that the plaintiffs have taken completely out of context, and it is entirely contrary to the substance of the ALJ's decision.

In addition to the ALJ's other rulings made in the decisions issued on remand, the ALJ held that the overpayment claims from 1991 and 1992 were "waived" under Section 1870(b) of the Social Security Act. This section provides that a provider will be deemed without fault for erroneous billing if there is no evidence to the contrary, and the carrier fails to make its overpayment determination in a timely fashion. The Medicare Providers Manual ("Manual") states that a provider may not be deemed without fault where a pattern of billing for noncovered services has been established because such a pattern would constitute "evidence to the contrary" within the meaning of the statute.

The ALJ found that a pattern of billing for noncovered services did not exist for 1991 and 1992, and thus, that County Ambulance is deemed to be without fault for any erroneous billing during those years. Accordingly, the ALJ held that the statutory waiver applied for the claims from 1991 and 1992. Contrary to the plaintiff's assertions, the ALJ's finding—that a pattern of billing for noncovered services did not exist—was not an instruction to Empire not to apply the statistical extrapolation technique when it recalculated the overpayment. Rather, the ALJ's finding pertained to his determination that statutory waiver was applicable to overpayments made during 1991 and 1992. Therefore, the Court finds the plaintiffs' argument—that Empire's use of the statistical extrapolation technique in recalculat-

ing the amount of the overpayment was contrary to the ALJ's decision—is without merit.

Moreover, had the ALJ found that Empire should not apply the random sampling technique in re-extrapolating the overpayment, he would have articulated that holding in his decision because the use of the technique was an issue raised and argued before him. Instead, the ALJ found that the courts have sanctioned CMS's right to use the procedure and that County Ambulance's challenge to its mechanics was insufficient. In addition, he directed Empire to remove the claims he had determined were allowable from its recalculation of the overpayment using the stratified random sampling technique. Similarly, the ALJ did not hold that the plaintiffs were entitled to receive the specific sum of $4,920.46, as the plaintiffs now claim. Thus, the Court finds that the plaintiffs have not shown that they have a "right" to recover the money Empire withheld minus $4,920.46.

Third, for the reasons just stated, the defendants are not under a clear nondiscretionary duty to recalculate the overpayment without using the random sampling technique or to repay the plaintiffs all the funds withheld less the sum of $4,920.46.

In sum, the Court finds that a writ of mandamus would not issue in this case because the plaintiffs have other avenues of relief; the plaintiffs have not shown that they have a right to the return of all the withheld funds less the sum of $4,920.46; and the plaintiffs have not identified a clear nondiscretionary duty which has not been discharged by the defendants. Because a writ of mandamus would be unavailable in this case, the Court lacks mandamus jurisdiction over the action. *See Heckler*, 742 F.2d 729, 739 (2d Cir.1984). As plaintiffs have not identified any other basis for federal subject matter jurisdiction, the Court finds that they have not

met their burden of establishing the existence of subject matter jurisdiction by a preponderance of the evidence. *See Makarova*, 201 F.3d at 113. Accordingly, the Court grants the motion by the defendants to dismiss the complaint pursuant to Rule 12(b)(1).

### III. *CONCLUSION*

Based on the foregoing, it is hereby

**ORDERED**, that the motion by the defendants to dismiss the complaint pursuant to Rule 12(b)(1) is **GRANTED**; and the complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**