

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-5-2006

# Fletcher v. Lucent Tech Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3604

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Fletcher v. Lucent Tech Inc" (2006). *2006 Decisions*. Paper 352.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/352

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-3604

———————

LINDA M. FLETCHER,
                                            Appellant

v.

LUCENT TECHNOLOGIES INC.

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 02-cv-03941
District Judge:  The Honorable Joseph A. Greenaway, Jr.

———————

Submitted Under Third Circuit LAR 34.1(a)
September 12, 2006

———————

Before: SCIRICA, Chief Judge, SLOVITER and BARRY, Circuit Judges

———————

( Filed:  October 5, 2006 )

———————

OPINION

———————

BARRY, Circuit Judge

        Appellant Linda M. Fletcher brought suit against appellee Lucent Technologies

Inc., which she claimed terminated her on account of her gender, in violation of Title VII

of the Civil Rights Act ("Title VII"), and unlawfully interfered with rights she had in her pension, in violation of the Employee Retirement Income Security Act ("ERISA").[1] The District Court granted summary judgment to Lucent, and Fletcher appeals. We will, for the reasons provided below, affirm the grant of summary judgment.

## I.

On April 30, 2001, Fletcher's supervisor, Gary Timblin, informed her that she would be included in Lucent's Force Management Plan ("FMP"). The FMP was a series of rolling layoffs designed to reduce the workforce at the company, and left Fletcher with 60 days during which to find another position at Lucent. If she failed to find another job in the company, she would be terminated at the end of the 60 days. Lucent selected employees to be included in the FMP by comparing the performance ratings of those "employees that serve[] similar functions . . . at the same location." (App. at 6a.) Of the nine employees with whom Fletcher was compared, all of whom were men, the five with the highest scores were retained.

Near the end of May 2001, Lucent announced that merger discussions in which it had been engaged with a French company concluded unsuccessfully. As a result, Lucent was forced to reduce its payroll, and instituted a new voluntary retirement plan, dubbed the 5 + 5 Plan. Employees eligible for the plan could, between June 11, 2001 and July 10,

---

[1] Appellant also brought an age discrimination claim which she has abandoned on appeal.

2

2001, choose to retire with five years of service and five years of age added to the computation of their retirement benefits. Fletcher, as an employee on FMP status, was ineligible for the voluntary retirement inducement, of which she became aware via email on June 6, 2001. She failed to find another job at Lucent and, as a result, was terminated on June 28, 2001.

Fletcher filed a complaint with the Equal Employment Opportunity Commission on February 7, 2002, and a right-to-sue letter issued on May 17, 2002. On August 12, 2002, she filed this action in the U.S. District Court for the District of New Jersey. By order dated June 29, 2005, the District Court granted Lucent's motion for summary judgment. This timely appeal followed. On September 27, 2005, the District Court filed an opinion stating its reasons for the grant of summary judgment.[2]

## II.

To withstand summary judgment, a Title VII gender discrimination plaintiff must point to direct or circumstantial evidence sufficient to permit a factfinder either (1) to disbelieve the employer's articulated legitimate reasons for taking an adverse employment action, or (2) to believe that gender discrimination "was more likely than not a motivating

---

[2] We exercise jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary. *Stratton v. E.I. DuPont de Nemours & Co.*, 363 F.3d 250, 253 (3d Cir. 2004). Summary judgment is appropriate if there is no genuine issue of material fact and, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Stratton*, 363 F.3d at 253.

3

or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Fletcher attempts to satisfy this burden by relying on her characterization of her working group as "male dominated"; the fact that all of the employees retained in that group were male; and her recollection of a conversation she had with her supervisor, Edward Sproles, sometime prior to April 2000. In that conversation, Fletcher complained that she did not feel as though she were a respected member of the team, with Sproles responding that "there are other groups or other companies." (App. at 56a.) Fletcher understood this statement to be a suggestion that she should leave the company if she were unhappy.

This is simply not enough. Fletcher concedes that to characterize her work environment as "male dominated," as she does, is "vague and conclusory" (Appellant's Br. 25), and we agree. Indeed, we generally require corroboration of such conclusory statements by at least some evidence of discrimination. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) ("In order to satisfy the standard for summary judgment 'the affiant must ordinarily set forth facts, rather than opinions or conclusions. An affidavit that is 'essentially conclusory' and lacking in specific facts is inadequate to satisfy the movant [or non-movant]'s burden.'" (quoting *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985)).

Although the five retained employees were men, four of the five discharged employees were also men. Moreover, there is no evidence that Lucent undertook

4

affirmative measures to retain male employees. *Cf. Hallquist v. Local 276, Plumbers & Pipefitters Union*, 843 F.2d 18, 24-25 (1st Cir. 1988) (affirming district court's finding of discrimination where evidence showed that employer fired the only female on staff while actively undertaking measures, such as juggling vacation time, to retain male employees during work shortage). Nor is there evidence that Lucent subsequently rehired only male employees. *Cf. id.* (finding circumstantial evidence of gender discrimination where employer, after firing female employee, immediately hired two additional male employees).

Finally, there is no evidence that Fletcher received a discriminatory performance evaluation, *see Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext."), *overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993), or that the method used to evaluate employees for FMP designation had a disparate impact on female employees, *see Bryant v. Int'l Sch. Servs., Inc.*, 675 F.2d 562, 572 (3d Cir. 1982) ("Plaintiffs must show that a facially neutral standard results in a significantly discriminatory pattern or impact."). Indeed, while Fletcher insists that she was a good employee, she does not take issue with her performance rating relative to those of the five employees who were retained. *See Jewett v. Int'l Tel. & Tel. Corp.*, 653 F.2d 89, 91 (3d Cir. 1981) (finding that plaintiff had failed to establish a prima facie case of gender discrimination where male candidate received promotion and record contained

no evidence that plaintiff's qualifications equaled those of promoted employee).

Fletcher, then, is left with the argument that discriminatory animus may be inferred from the character and tone of Sproles's statement to her sometime prior to April 2000. We disagree. Even assuming that this brief exchange occurred as Fletcher describes it, she concedes that she never specifically complained to Sproles, or anyone else at Lucent, about what she later characterized as the "male-dominated environment" of her working group, and the statement itself is not suggestive of gender animus. Moreover, this single statement occurred more than a year before Fletcher's placement on FMP status. We have observed that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992). Accordingly, we agree with the District Court that there is no evidence, either direct or circumstantial, that Fletcher was subjected to any gender discrimination by Lucent.

### III.

We turn next to Fletcher's ERISA claim. In her Amended Complaint, Fletcher alleged that Lucent's actions in terminating her "were pretextual so as to preclude her eligibility from the 5 + 5 enhanced pension and medical benefits." (App. at 71a.) She subsequently asserted that her placement on FMP status, which occurred "barely 6 weeks prior to the offer of the 5 + 5 plan," was "clearly pretextual to Lucent's interference with

6

[her] attainment of her rights to an enhanced pension plan." (*Id.* at 38a.) Fletcher argued to the District Court that a factfinder could reasonably conclude that when Lucent placed her on FMP status, it did so with the intention of precluding her from later attaining enhanced benefits under the 5 + 5 Plan.

Fletcher now concedes that Lucent conceived the 5 + 5 Plan in good faith only *after* she was placed on FMP status, thus abandoning the sole theory that she advanced in the District Court. In its place, she now argues that Lucent sought to keep her on FMP status by blocking her efforts to obtain another position in the company.[3]

We have held that "a trial court should not be reversed on grounds that were never urged or argued in the court below." *Caisson Corp. v. Ingersoll-Rand Co.*, 622 F.2d 672, 680 (3d Cir. 1980). Indeed, on appeal of an order granting summary judgment, an appellant generally may not "'advance new theories or raise new issues in order to secure a reversal of the lower court's determination.'" *Union Pac. R.R. Co. v. Greentree Transp. Trucking Co.*, 293 F.3d 120, 126 (3d Cir. 2002) (quoting 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2716 (3d ed. 1998)). Because no reason to deviate from this general rule is either offered or

---

[3] We recognize that in her statement of "Facts Which Are in Dispute," filed with her brief in opposition to Lucent's motion for summary judgment, Fletcher asserted that "Lucent unequivocally blocked every re-employment or relocation chance." (App. at 38a.) This assertion, however, formed no part of her argument in opposition to Lucent's motion for summary judgment, and the District Court's only passing reference to this incipient issue was in a footnote.

apparent, *see Selected Risks Ins. Co. v. Bruno*, 718 F.2d 67, 69 (3d Cir. 1983), we find that Fletcher waived her argument that Lucent blocked her from finding another job while on FMP status.

Even if we were to consider this argument, however, it is without merit. Fletcher invokes § 510 of ERISA, which, in relevant part, prohibits any person from taking action against a participant or beneficiary of an employee benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. "[T]he essential element of proof under § 510 is specific intent to engage in proscribed activity." *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 851 (3d Cir. 1987). When, as here, a § 510 plaintiff relies on circumstantial evidence to prove specific intent, a court will evaluate the evidence within the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Gavalik*, 812 F.2d at 852. To survive summary judgment, the § 510 plaintiff ultimately must prove that the defendant's proffered legitimate, non-discriminatory reason for its action "was pre-textual and that the cancellation of benefits was the 'determinative influence' on the employer's actions." *Eichorn v. AT&T Corp.*, 248 F.3d 131, 149 (3d Cir. 2001) (quoting *DiFederico v. Rolm Co.*, 201 F.3d 200, 205 (3d Cir. 2000)).[4]

---

[4] We assume, *arguendo*, that Fletcher has made out a prima facie case under § 510. *See Gavalik*, 812 F.2d at 852 (requiring a § 510 plaintiff to make a prima facie showing of "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled"). Fletcher likely fails to make even this threshold showing. As discussed below, there is no evidence that

Fletcher's argument that Lucent blocked her efforts to find another job in the company fails to raise a genuine issue of material fact. First, we agree with the District Court that Fletcher's argument regarding the timing of the rolling layoffs and announcement of the 5 + 5 Plan was unsupported and speculative. Second, because Fletcher no longer contests the good-faith creation of the 5 + 5 Plan, her argument is essentially that she was deprived of the opportunity to accrue enhanced benefits by being blocked from finding another job. But "'where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him.'" *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 348 (3d Cir. 1990) (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 771 (5th Cir. 1988)).

Third, Fletcher claims that she sought a position at Lucent's Holmdel facility and initially felt encouraged about her prospects, but that she ultimately was not offered the job. This demonstrates only that she was not hired for a job she sought, not that she was blocked by Lucent from the job. Moreover, there is no evidence that she was rejected for this position *after* the 5 + 5 Plan was announced, evidence that would be critical for any

---

Lucent acted for the purpose of interfering with her attainment of enhanced pension benefits, rather than for some other valid reason. *See, e.g.*, *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 348 (3d Cir. 1990) (finding that § 510 plaintiff failed to make a prima facie showing where plaintiff had shown only that his termination deprived him of the opportunity to accrue additional benefits).

finding that Lucent intended to interfere with her attainment of 5 + 5 Plan benefits. Indeed, it appears that her unsuccessful attempt to secure the Holmdel position occurred well *before* Lucent created and announced the 5 + 5 Plan.

Fletcher also notes that she inquired about but did not receive a printed wiring board position. However, she admits that she was told the position had already been filled, and her suggestion that this information was false is unsupported by any evidence. She further points to Lucent's policy that to remove an employee from FMP status required two executive approvals. Once again, she relies on nothing more than speculation to tie this company policy to any specific intent to interfere with employee benefits. Similar assertions that Lucent failed to advertise available positions lack evidentiary support. Finally, Fletcher refers to a conversation she had with Vice President David Landau "[s]ometime between June 20 and June 27, 2001" in which Landau expressed pessimism at Fletcher's prospects for finding a job before the end of her 60-day FMP period. (Appellant's Br. 11.) Given that Fletcher's 60-day period ended on June 28, 2001, Landau's pessimism appears entirely warranted. In sum, no reasonable jury could find that Fletcher's ERISA claim was meritorious.

## IV.

For the foregoing reasons, we will affirm the District Court's order of June 29, 2005.