**Charles Rudd MACKENZIE, Plaintiff,**

v.

**W. Denis DONOVAN, the Community Preservation Corporation, Patrick McCormick, Certilman Balin Adler & Hyman, LLP and Helene Rudolph, Defendants.**

**No. 04 CIV. 5291(WCC).**

United States District Court, S.D. New York.

June 29, 2005.

See also 14 A.D.3d 600, 788 N.Y.S.2d 611.

Charles Rudd Mackenzie, Esq., Hastings–on–Hudson, NY, Plaintiff Pro se.

Eliot Spitzer, Attorney General of the State of New York (Constantine A. Speres, Esq., Asst. Attorney General, Of Counsel), New York City, for Defendant W. Denis Donovan.

Brown Raysman Millstein Felder & Steiner, LLP (Edward Copeland, Esq., Barry Felder, Esq., Alyson R. Weckstein, Esq., Of Counsel), New York City, for

Defendants The Community Preservation Corporation and Helene Rudolph, New York.

Certilman Balin Adler & Hyman, LLP (Thomas J. McNamara, Esq., Candace Reid Gladston, Esq., Natalie Rivkin, Esq., Of Counsel), East Meadow, NY, for Defendants Patrick McCormick and Certilman Balin Adler & Hyman, LLP.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

*Pro se* plaintiff[1] Charles Rudd Mackenzie commenced this action against defendants the Honorable W. Denis Donovan, Justice of the New York State Supreme Court, Westchester County, the Community Preservation Corporation ("CPC"), Certilman Balin Adler & Hyman, LLP ("Certilman Balin"), Patrick McCormick and Helene Rudolph, (collectively, the "defendants"), alleging various violations of 42 U.S.C. § 1983 as well as multiple state law tort claims including: intentional misrepresentation, intentional infliction of emotional distress, slander/defamation, assault, battery, trespass to chattels, conversion, libel, false imprisonment, malicious prosecution, invasion of privacy and abuse of process. All of plaintiff's claims stem from a criminal contempt conviction entered against him in state court. Defendants now move to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to FED. R. CIV. P. 12(b)(6) for failure

to state a claim upon which relief may be granted.[2] For the reasons set forth below, defendants' motions to dismiss the Complaint for lack of subject matter jurisdiction are granted.

## BACKGROUND

All parties are residents of the State of New York. (Complt.¶¶ 1–6.) Defendant Donovan is a Justice of the New York State Supreme Court, Westchester County. Defendant McCormick is a partner of defendant Certilman Balin, a law firm located in New York. (*Id.* ¶ 4.) Defendant Rudolph is an attorney employed in-house by defendant CPC. (*Id.* ¶ 6.)

In 1998, the Federal National Mortgage Association ("Fannie Mae") commenced a mortgage foreclosure action against all parties interested in a property located in Yonkers, New York (the "Yonkers property"). *See Federal Nat'l Mortgage Ass'n v. 24 Caryl Ave. Realty Co.,* Index No. 12578/98 (Sup.Ct. Westchester County) (hereinafter, the *"Fannie Mae* Action"). (CPC Def. Mem. Supp. Mot. Dismiss at 5.) Defendant CPC was named in the *Fannie Mae* Action because it held a second mortgage on the Yonkers property. (*Id.* (citing February 13, 2004 Decision and Order at 2, 4 in *Papa v. 24 Caryl Ave. Realty Co.,* Index No. 00–09221 (Sup.Ct. Westchester County) (hereinafter, the "2/13/04 Decision," attached as Copeland Decl., Ex. A)).)

Plaintiff, on behalf of his client Florin Papa, sought to intervene as a necessary party in the *Fannie Mae* Action. (CPC Def. Mem. Supp. Mot. Dismiss at 5.) Ap-

---

**1.** We note that although plaintiff is proceeding *pro se* in the present action, he is an attorney duly licensed to practice law in the State of New York and in the United States District Court, Southern District of New York. (Complt.¶ 1.)

**2.** Defendants filed three separate motions: Justice Donovan on his own; defendants McCormick and Certilman Balin together; and defendants CPC and Rudolph together. All three motions are based on the same or similar grounds. Therefore, in the interests of judicial economy we address all three motions together herein.

parently, Papa and his former wife held a second mortgage on the Yonkers property; however, their mortgage was recorded as satisfied in the Westchester County Clerk's Office. (*Id.* (citing May 1, 2003 Decision and Order in *Papa v. 24 Caryl Ave. Realty Co.*, Index No. 00–09221 (hereinafter, the "5/1/03 Decision," attached as Copeland Decl., Ex. B)).) The Honorable Orazio R. Bellantoni, Justice of the Supreme Court, Westchester County, denied Papa's motion to intervene because he had "submitted no evidence in admissible form establishing that he has any interest in the property being foreclosed or that he is a necessary party." (April 3, 2000 Decision and Order at 2, attached as Copeland Decl., Ex. C.)

Thereafter, plaintiff commenced two new actions on behalf of Papa. (CPC Def. Mem. Supp. Mot. Dismiss at 6.) On October 12, 1998 Papa filed an action against his former wife, alleging that she had fraudulently satisfied a $245,000.00 mortgage held by them on the Yonkers property, and seeking recovery of one-half of the proceeds. (*Id.* (citing 2/13/04 Decision at 3 (discussing *Papa v. Papa*, Index No. 16220/98 (Sup.Ct. Westchester County 2000) ("*Papa I*")).) This action also named as defendants 24 Caryl Avenue Realty Co., its principals and Fannie Mae and sought to foreclose on the mortgage. (CPC Def. Mem. Supp. Mot. Dismiss at 6.) In July of 2002, the court found that the mortgage at issue in *Papa I* had been satisfied and therefore could not be the basis for a foreclosure action. (*Id.* (citing July 20, 2000 Decision and Order in *Papa I*, attached as Copeland Decl., Ex. D).)

On June 16, 2000, Papa filed a second action to foreclose on the same previously satisfied mortgage, *Papa v. 24 Caryl Ave. Realty Co.*, Index No. 00–09221, (Sup.Ct.

Westchester County) ("*Papa II*"), naming only 24 Caryl Avenue Realty Co. and its principals as defendants. (*Id.* (citing 5/1/03 Decision at 2).)[3] Plaintiff filed a motion for a default judgment on behalf of Papa against 24 Caryl Avenue Realty Co. and its principals in satisfaction of the unpaid amount of the subject mortgage between them. (*Id.* ¶ 11.) However, plaintiff failed to list either of the two previous foreclosure actions in the related case section of the request for judicial intervention form. (*Id.*) The motion was unopposed and plaintiff obtained a default judgment. (*Id.* ¶ 12.) The matter was referred to a referee to determine what amount was due to Papa. (CPC Def. Mem. Supp. Mot. Dismiss at 7 (citing 2/13/04 Decision at 4).) Meanwhile, a foreclosure sale had taken place in the *Fannie Mae* Action satisfying Fannie Mae's claim, and the $259,985.71 surplus was deposited with the Westchester County Department of Finance (the "Dep't of Finance"). (*Id.* (citing 2/13/04 Decision at 4, n. 1).) Pursuant to the referee's report, Justice Donovan directed that approximately $229,000.00 be turned over to Papa from the aforementioned surplus funds. (*Id.* (citing 2/13/04 Decision at 4).)

Thereafter, in accordance with the *Fannie Mae* Action, CPC obtained an order directing that it be paid $122,698.13 plus interest from the surplus funds to satisfy its mortgage. (*Id.*) However, when CPC attempted to enforce Justice Bellantoni's order, it was advised that there were insufficient funds left in the surplus account because of the amount paid to plaintiff's client on the default judgment. (Speres Aff. ¶ 16, Ex. B.) Justice Donovan granted CPC's motion to intervene in *Papa II*, vacated the default judgment and directed Papa to return the money to the Dep't of

---

3. This action was filed subsequent to Justice Bellantoni's April 3, 2000 order denying Papa leave to intervene in the *Fannie Mae* Action. (Speres Aff. ¶ 10.)

Finance. (CPC Def. Mem. Supp. Mot. Dismiss at 7 (citing 5/1/03 Decision at 3).) Justice Donovan informed plaintiff that failure to comply would subject him to criminal contempt. (Speres Aff. ¶ 18, Ex. B.)

Justice Donovan also indicated that had the court been aware of all the relevant facts, the funds would not have been released to Papa. (CPC Def. Mem. Supp. Mot. Dismiss at 7 (citing 5/1/03 Decision at 3). Additionally, the court found that plaintiff and Papa "had actual knowledge that CPC held a valid mortgage" but neglected to name CPC as a defendant in *Papa II*. (*Id.*) (citing 5/1/03 Decision at 3–4).) The court also found that neither plaintiff, nor Papa, "advised the Court that the Papa mortgage had been satisfied," and that their representation that there were no other persons with an interest in the funds "were total falsehoods aimed at misinforming this Court . . . ." (*Id.*)

To date, neither plaintiff, nor Papa, has complied with Justice Donovan's order to return the money. (CPC Def. Mem. Supp. Mot. Dismiss at 8.) Plaintiff and defendants McCormick and Certilman Balin, counsel for CPC, appeared before Justice Donovan at a June 19, 2003 conference. (*Id.*) During that conference, plaintiff confirmed that he had not returned the money to the Dep't of Finance and also informed the court that Papa was incarcerated at an undisclosed location and the funds had been provided to Papa's parents.[4] (Speres Aff. ¶ 20.) Plaintiff also revealed that he had a contingency fee arrangement with Papa and had received approximately $80,000.00 in legal fees from the amount paid to Papa. (*Id.* ¶ 21.)

Justice Donovan ordered plaintiff to deposit the entire payment he received from Papa with the Dep't of Finance by June 23, 2003. (*Id.*) (citing 2/13/04 Decision at 5.) The court also directed plaintiff to appear with Papa's father on June 23, 2003, and further advised plaintiff that failure to comply with this order would result in his being held in criminal contempt. (*Id.*) Plaintiff appeared on June 23, 2003, but failed to deposit the funds. (*Id.*) As a result, plaintiff was charged with "willful disobedience to a lawful mandate of the court" and was given until July 10, 2003 to appear and show cause why he should not be held in criminal contempt. (*Id.*)

On July 8, 2003, plaintiff presented four checks, amounting to $27,451.08, to the Dep't of Finance as partial payment of the amount due. (Speres Aff. ¶ 25.) Plaintiff also submitted an affidavit to the court concerning his financial status, noting that his malpractice insurance carrier had denied his claim. (*Id.*) On July 10, 2003, plaintiff appeared with counsel at his contempt hearing. (*Id.* ¶ 26.) At the hearing, Justice Donovan found that plaintiff's explanation about his finances was inadequate and held plaintiff in criminal contempt for his failure to comply with the June 23, 2003 order. (*Id.*) Plaintiff was sentenced to thirty days in jail, but his commitment was stayed until July 14, 2003 to allow him to appeal to the New York State Supreme Court, Appellate Division, Second Department (the "Second Department"). (*Id.*)

Plaintiff applied to the Second Department for a stay of the commitment on the criminal contempt pending the outcome of his appeal. (*Id.* ¶ 27.) The Second Department initially granted a temporary stay, but then vacated the stay and denied plaintiff's application for a stay of all proceedings pending the determination of his appeal of the July 10, 2003 criminal con-

---

**4.** Plaintiff advised the court that Papa's parents owned a home in Rockland County, New York, but that his mother was out of the country at that time. (*Id.*)

tempt order. (*Id.*, Ex. C.) On August 1, 2003, plaintiff appeared again before Justice Donovan and was ordered to be immediately committed to the Westchester County Jail, where he remained until August 29, 2003. (*Id.* ¶ 29.) Plaintiff was also ordered to surrender his passport after he indicated that he had imminent plans to leave the country. (Copeland Decl., Ex. E.)

Plaintiff appealed Justice Donovan's criminal contempt order to the Second Department. Plaintiff's appeal was still pending at the time defendants filed the present motion. However, in a Decision and Order dated January 24, 2005, the court concluded that the evidence before Justice Donovan was sufficient to find that plaintiff willfully disobeyed a lawful mandate of the court and that plaintiff's remaining contentions were without merit. *See Papa v. 24 Caryl Ave. Realty Co.*, 14 A.D.3d 600, 788 N.Y.S.2d 611 (2d Dep't 2005). Plaintiff has since appealed the Appellate Division's decision to the New York State Court of Appeals. (Pl. 2/2/05 Letter.) Plaintiff's motion for leave to appeal was recently dismissed; however, plaintiff has since indicated that he has filed a motion to reargue which is still pending. (Pl. 6/7/05 Letter.)

Plaintiff commenced the present action alleging three § 1983 claims and twelve state law tort claims. (Complt.¶¶ 1–65.) All of plaintiff's claims arise out of the criminal contempt proceedings before Justice Donovan. Plaintiff's first claim, asserted against Justice Donovan, alleges that he violated various rights of plaintiff when he held plaintiff in contempt of court and committed plaintiff to the Westchester County Jail. (*Id.* ¶¶ 7–14.) Plaintiff's second and third claims, asserted against Justice Donovan, McCormick, Certilman Balin

and CPC, allege that defendants conspired against him to revoke his passport and violated various other rights of plaintiff, including his right to travel.[5] (Complt. ¶¶ 15–23.) Plaintiff also alleges that he was deprived of his property and liberty, lost clients and income, incurred legal fees, and that his reputation was damaged. (*Id.*) Plaintiff's remaining state law tort claims include: intentional misrepresentation, intentional infliction of emotional distress, slander/defamation, assault, battery, trespass to chattels, conversion, libel, false imprisonment, malicious prosecution, invasion of privacy and abuse of process. (*Id.* ¶¶ 24–65.)

Defendants set forth the following arguments in support of their present motions: (1) this Court lacks subject matter over the instant action under the *Rooker–Feldman* doctrine; (2) even if subject matter jurisdiction does exist, the Court should abstain from considering the action for comity reasons; (3) if the Court determines that subject matter jurisdiction does not exist with respect to plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims; and (4) even if the Court finds that subject matter jurisdiction exists and rules of comity do not apply, plaintiff has failed to state a claim upon which relief can be granted. (Donovan Def. Mem. Supp. Mot. Dismiss at 9–15; CPC Def. Mem. Supp. Mot. Dismiss at 10–23; McCormick Def. Mem. Supp. Mot. Dismiss at 14–24.) Defendant Donovan also contends that plaintiff's claims for money damages against him must be dismissed pursuant to the Eleventh Amendment and the doctrine of absolute judicial immunity. (Donovan Def. Mem. Supp. Mot. Dismiss at 9, 10, 12, 14.)

---

**5.** Defendants CPC and Rudolph note that plaintiff does not mention Rudolph in his federal claims. (CPC Def. Mem. Supp. Mot. Dismiss at 2.)

## DISCUSSION

### I. *Standard of Review on Motion to Dismiss*

When considering a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction the court must "accept as true all material factual allegations in the complaint." *Shipping Fin. Serv. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Drakos,* 140 F.3d at 129 (citing *Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)). In addition, when a motion to dismiss challenges the court's jurisdiction, the court may look beyond the allegations of the complaint to satisfy itself of its power to hear the case. *See LeBlanc v. Cleveland,* 198 F.3d 353, 355 (2d Cir.1999) ("Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings ...."). "Thus, the standard used to evaluate a Rule 12(b)(1) claim is akin to that for summary judgment under Fed. R. Civ. P. 56(e)." *Serrano v. 900 5th Avenue Corp.,* 4 F.Supp.2d 315, 316 (S.D.N.Y.1998). Plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. *See Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996).

On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683; *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp. Sec. Litig.,* 825 F.Supp. 578, 583 (S.D.N.Y.1993) (Conner, J.). On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States,* 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Generally, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 James Wm. Moore Et Al., Moore's Federal Practice § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995).

Furthermore, when presented with a Rule 12(b)(1) motion along with other motions to dismiss, the court must decide the Rule 12(b)(1) motion first. *See Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n,* 896 F.2d 674, 678 (2d Cir.1990) (noting that "where ... the defendant moves for dismissal under Rule 12(b)(1), ..., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first, since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot") (internal citations and quotations omitted). Accordingly, we will consider defendants' Rule 12(b)(1) motion first. Then, if necessary, we will consider defendants' Rule 12(b)(6) motion.

### II. *Motion to Dismiss Pursuant to Rule 12(b)(1)*

#### A. *Rooker–Feldman Doctrine*

Defendants contend that this Court lacks subject matter jurisdiction over

plaintiff's claims because he is essentially seeking review of Justice Donovan's rulings in connection with the state court criminal contempt proceeding, which is prohibited by the *Rooker–Feldman* doctrine. (Donovan Def. Mem. Supp. Mot. Dismiss at 10–11; CPC Def. Mem. Supp. Mot. Dismiss at 10–13; McCormick Def. Mem. Supp. Mot. Dismiss at 14–16.) Defendants maintain that although the Complaint does not explicitly state that plaintiff seeks review of Justice Donovan's rulings, the Complaint is actually a "thinly-veiled attempt to challenge the underlying state court decision finding him in contempt of court and the commitment and surrender of his passport that followed." (CPC Def. Mem. Supp. Mot. Dismiss at 11.) According to defendants, plaintiff's federal claims are predicated on his assertion that Justice Donovan erred when he convicted plaintiff of contempt, consequently committed him to custody and ordered the surrender of his passport. (*Id.* at 12; Donovan Def. Mem. Supp. Mot. Dismiss at 11–12; McCormick Def. Mem. Supp. Mot. Dismiss at 16.) Therefore, defendants maintain that any relief afforded by this Court would necessarily be based upon a decision that the state court's actions were wrong. (*Id.*)

In response to the present motion, plaintiff maintains that the Court should "stay the proceedings in light of the *Rooker–Feldman* doctrine," rather than dismiss the action, pending the outcome of "the state court appeal of his criminal contempt conviction." (Pl. Aff. Opp. Mot. Dismiss ¶¶ 56, 57.) Additionally, plaintiff argues that even if *Rooker–Feldman* requires dismissal, the action should be dismissed without prejudice because "this Court would have original, personal jurisdiction over the moving defendants in the event plaintiff prevails in his state court appeal." (*Id.* ¶ 59.)

Under the *Rooker–Feldman* doctrine, "lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.1998) (reviewing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)); *see also Sundwall v. Lueba*, No. 300 Civ. 1309, 2001 WL 58834, at *6 (D.Conn. Jan. 23, 2001); *Bell v. State*, No. 99 Civ. 5809, 2000 WL 1273637, at *3 (S.D.N.Y. Sept. 7, 2000). This rule applies even to interlocutory state courts orders. *See Campbell v. Greisberger*, 80 F.3d 703, 707 (2d Cir.1996). Moreover, "even where a state court judgment is not being appealed directly, 'the District Court is in essence being called upon to review the state court decision' where 'claims presented to a . . . District Court are inextricably intertwined with the state court's determination.'" *Bell*, 2000 WL 1273637, at *4 (citing *Feldman*, 460 U.S. at 462, 103 S.Ct. 1303).

Inextricably intertwined "means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir.1996). In other words, "a federal claim is 'inextricably intertwined' with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" *Bell*, 2000 WL 1273637, at *4 (citations omitted).

■ Plaintiff appealed the July 10, 2003 criminal contempt order to the Appellate Division, and in a Decision and Order dated January 24, 2005, the court concluded that the evidence before Justice Donovan was sufficient to find that plaintiff willfully disobeyed a lawful mandate of the court, and that plaintiff's remaining contentions were without merit. *See Papa*, 14 A.D.3d 600, 788 N.Y.S.2d 611. As previously mentioned, plaintiff has appealed the Appellate Division's decision to the New York State Court of Appeals. (Pl. 2/2/05 Letter.)

In bringing the present action, plaintiff is effectively asking this Court to review the state court action and rule on the propriety of Justice Donovan's order. This is "precisely the sort of action that *Rooker–Feldman* is designed to prohibit." *Sundwall*, 2001 WL 58834, at *7. Plaintiff's claims are "inextricably intertwined" with the state court action because granting plaintiff his requested relief would effectively declare the state court order invalid, which this Court is not permitted to do. *See Kashelkar v. MacCartney*, 79 F.Supp.2d 370, 373 (S.D.N.Y.1999), *aff'd*, 234 F.3d 1262 (2d Cir.2000) (noting that a "plaintiff cannot evade *Rooker–Feldman* by casting his claim in the guise of a federal civil rights violation"). Such a result is simply beyond the bounds of our jurisdiction. Accordingly, plaintiff's First, Second and Third claims are dismissed with prejudice.[6]

Because we have determined that this Court lacks subject matter jurisdiction over plaintiff's federal claims under the *Rooker–Feldman* doctrine, it is not necessary to address defendants' remaining arguments in support of their Rule 12(b)(1) motion.

### III. *Plaintiff's State Law Claims*

■ A district court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When determining whether to exercise supplemental jurisdiction, a district court has "considerable discretion over what state law claims it will include within its supplemental jurisdiction in a particular case." *Yaba v. Cadwalader, Wickersham & Taft*, 931 F.Supp. 271, 275 (S.D.N.Y.1996) (quoting *Cushing v. Moore*, 970 F.2d 1103, 1110 (2d Cir.1992)). Accordingly, as all federal claims have been dismissed, we exercise our discretion and dismiss plaintiff's remaining state law claims without prejudice.

Because we have dismissed plaintiff's federal claims for lack of subject matter jurisdiction and decline to exercise supplemental jurisdiction over plaintiff's state law claims it is not necessary to address the issues raised by defendants' Rule 12(b)(6) motion.

### CONCLUSION

For the foregoing reasons, defendants' respective FED. R. CIV. P. 12(b)(1) motions are granted. Plaintiff's First, Second and Third claims are dismissed with prejudice

---

6. Plaintiff's suggestions—that we stay rather than dismiss his federal claims pending the outcome of his state court appeal, or dismiss the claims without prejudice—are of no avail because at no time will this Court have subject matter jurisdiction over plaintiff's federal claims. This is so because the relief plaintiff seeks would still require this Court to collaterally review the actions of Justice Donovan and/or those of the Second Department and the New York State Court of Appeals, which we are not permitted to do. In other words, whether plaintiff brings his claims now or at the conclusion of the state court appeal of his contempt conviction does not change the fact that this Court lacks subject matter jurisdiction under *Rooker–Feldman*.

and plaintiff's remaining state law claims are dismissed without prejudice.

SO ORDERED